Thomas David Strickler

v.

Edward W. Murray, et al.

Record No. 931792

January 13, 1995

Present: All the Justices

*Katherine Carruth Link (Victor M. Santos; Nelson, McPherson, Summers & Santos, on briefs), for appellant.*
*H. Elizabeth Shaffer, Assistant Attorney General (James S. Gilmore, III, Attorney General, on brief), for appellees.*

JUSTICE HASSELL delivered the opinion of the Court.

## I.

Thomas David Strickler was convicted of the capital murder, abduction, and robbery of Leanne Whitlock in the Circuit Court of Augusta County and sentenced to death. We affirmed the judgment of the circuit court in *Strickler v. Commonwealth*, 241 Va. 482, 404 S.E.2d 227, *cert. denied*, 502 U.S. 944 (1991).

Strickler filed a petition for writ of habeas corpus alleging, among other things, that his trial counsel's ineffective assistance

invalidates his conviction. The circuit court granted the respondent's motion to dismiss Strickler's petition, and we awarded Strickler an appeal limited to two issues: whether the circuit court erred in refusing to vacate the capital murder conviction because of an erroneous jury instruction that included in its definition of capital murder a predicate offense which does not by statute support a conviction of capital murder; and whether defense counsel failed to provide effective assistance of counsel by failing to object to the erroneous jury instruction.

## II.

On January 5, 1990, Leanne Whitlock, a 19-year-old African-American student at James Madison University, borrowed her boyfriend's blue 1986 Mercury Lynx car. Her boyfriend worked at the Valley Mall in Harrisonburg.

Leanne left the mall about 4:30 p.m. with her roommate, Sonja Lamb. Leanne drove to a store where she was employed part-time to pick up a paycheck. She dropped Sonja off about 6:45 p.m., and Leanne went back to the mall to return the car to her boyfriend.

Anne Stolzfus was in a store at Valley Mall with her daughter about 6:00 p.m. Strickler, Ronald Henderson, and a blond woman entered the store. Stolzfus observed Strickler with some apprehension because he was behaving in a loud, rude, and boisterous manner.

As Stolzfus was leaving the mall, she observed Leanne driving the blue Mercury. Stolzfus saw Strickler run out of the mall, shout at the occupant of a nearby van, and angrily pound on the van's door. Strickler then ran toward a pickup truck that was occupied. Next, he went to the car Leanne was driving, which was stopped in traffic. Strickler pounded on the passenger side window. Leanne leaned over as if she were trying to lock the door. Strickler opened the door, jumped into the car, and turned toward Leanne. She tried to push him away, but Strickler opened the door and motioned to Henderson and the blond woman to approach the car.

Leanne accelerated the car and began sounding blasts on the horn. Strickler repeatedly hit her, and she stopped the car. Henderson and the blond woman got in the back seat. Stolzfus approached the car and asked Leanne three times, "are you O.K.?" Leanne, who seemed "totally frozen," drove the Mercury away very slowly and "mouthed" the word "help."

Kurt D. Massie and a friend were driving north on Route 340 near Stuarts Draft about 7:30 p.m. They observed a dirty blue car turn off the road and enter a cornfield. Strickler was driving the car, a Caucasian female was seated in the front with Strickler, and another man was in the back seat. Massie thought he observed another occupant in the car.

Strickler and Henderson went to Dice's Inn in Staunton between 9:00 and 9:15 p.m. that evening. Strickler wore blue jeans that were dirty and bloody. Strickler gave a wristwatch to a woman named Nancy Simmons. The wristwatch was later identified as Leanne's property.

Strickler left Dice's Inn with Henderson and Donna Tudor about 12:30 or 1:00 a.m. They got into the blue car. Henderson drove, and Strickler sat in the back seat with Tudor. Strickler told Tudor that he had purchased the car from a man for $500. Strickler also said that he had been in a fight and injured his knuckle. Henderson and Strickler discussed a "fight" they had with "it" and described "it" with a racial epithet. Strickler said that he and Henderson had kicked "it" in the back of the head and had used a "rock crusher." Strickler said, "it" would give them "no more trouble."

Strickler, Henderson, and Tudor traveled to Harrisonburg where Henderson got out of the car. Tudor and Strickler went to Virginia Beach in the blue car. They stayed in Virginia Beach about a week, and Tudor saw Leanne's driver's license, identification card, and bank card in the car during that time. Strickler gave Tudor a pair of earrings that Leanne had worn on the night of January 5, and Strickler tried to use Leanne's bank card in Virginia Beach.

A few days later, Strickler and Tudor went to Strickler's mother's home in New Market. His mother washed the blood-stained blue jeans and Strickler's shirt. Strickler instructed Tudor to hide Leanne's cards in a bag with his tee shirt and other clothing. Tudor placed these items in a car that had been abandoned behind Strickler's stepfather's house. Tudor later took the police to the abandoned car where the items were retrieved.

Tudor and Strickler abandoned the blue car on January 10 or 11. On January 13, Henderson's wallet, which was frozen, was found in the cornfield where Kurt Massie had seen Strickler drive the blue car on January 5. The police searched the field later that day and found Leanne's frozen clothing near the place Hender-

son's wallet had been found. The police found Leanne's nude body in a nearby wooded area, buried under two logs and covered with leaves that had been deliberately packed around the logs.

Leanne had been dragged by the feet over the ground on her face at or shortly after her death. Her body contained lacerations and abrasions on the neck, face, and thighs. Some of the lacerations were consistent with kicking. The medical examiner determined that Leanne's death was caused by four large, crushing, depressed skull fractures with lacerations of the brain. Bone fragments were embedded in Leanne's brain, and brain tissue had exuded from the left front of her skull. Any of the fractures would have been lethal, but death was not instantaneous.

The police found a large rock, weighing 69 pounds, four ounces, near Leanne's body. The rock was stained with human blood in two places. There were two indentations in the frozen ground beside the rock. One indentation was about four inches deep. Each indentation contained human hair consistent with Leanne's hair in all respects and blood of Leanne's blood type.

Human hairs that were Caucasian in origin and matched Strickler's hair in all respects, were found on Leanne's frozen clothing. Some of the hairs had been torn out of Strickler's head by the roots. Two shoe impressions on the roof of the blue car matched a shoe Strickler was wearing when he was arrested. The shirt Strickler had been wearing on January 5 contained stains from semen consistent with Strickler's semen, as well as human blood stains. Vaginal swabs taken from Leanne's body showed the presence of semen, but its type was not identified.

Several instructions given by the trial court to the jury are relevant to this habeas appeal. Instruction No. 1, which defines capital murder, states:

> The defendant is charged with the crime of capital murder. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:
>
> (1) That the defendant killed Leanne Whitlock; and
>
> (2) That the killing was willful, deliberate and premeditated; and
>
> (3) That the killing occurred during the commission of robbery while the defendant was armed with a deadly

weapon, or occurred during the commission of abduction with the intent to extort money or a pecuniary benefit *or with the intent to defile* or was of a person during the commission of, or subsequent to, rape.

(Emphasis added).

Instruction No. 3 defines "deadly weapon:"

A "deadly weapon" is any object or instrument that is likely to cause death or great bodily injury because of the manner, and under the circumstances, in which it is used.

Instruction No. 8 instructed the jury on the elements of robbery:

The defendant is charged with the crime of robbery. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:

(1) That the defendant intended to steal; and

(2) That a motor vehicle and other personal property was taken; and

(3) That the taking was from Leanne Whitlock or in her presence; and

(4) That the taking was against the will of the owner or possessor; and

(5) That the taking was accomplished by violence to the person or the threat of serious bodily harm.

The jury returned the following verdicts at the conclusion of the guilt phase of the trial:

We, the jury, find the defendant guilty of Capital Murder, as charged in the indictment and as defined in Instruction No. 1.

We, the jury, find the defendant guilty of Robbery, as charged in the indictment, and fix his punishment at confinement in the penitentiary for life.

We, the jury, find the defendant guilty of Abduction, as charged in the indictment, and fix his punishment at life confined to the State Penitentiary.

## III.

### A.

First, Strickler argues that the trial court erred "in not vacating the capital murder conviction despite its finding that Instruction 1 given at petitioner's trial was defective because of its inclusion in the definition of capital murder [of] an underlying offense which does not by statute support a conviction of capital murder." Strickler's claim that Jury Instruction No. 1 is erroneous is procedurally barred because he failed to object to the instruction at trial, and he did not raise this objection on direct appeal. As we have held, "[a] prisoner is not entitled to use habeas corpus to circumvent the trial and appellate processes for an inquiry into an alleged non-jurisdictional defect of a judgment of conviction." *Slayton* v. *Parrigan*, 215 Va. 27, 30, 205 S.E.2d 680, 682 (1974), *cert. denied sub nom. Parrigan* v. *Paderick*, 419 U.S. 1108 (1975); *accord Epperly* v. *Booker*, 235 Va. 35, 43, 366 S.E.2d 62, 66-67 (1988), *cert. denied,* ____ U.S. ____, 114 S.Ct. 611 (1993); *Smith* v. *Murray*, 477 U.S. 527, 533 (1986).

### B.

Strickler argues that he was deprived of his constitutional guarantee of effective assistance of counsel because trial counsel failed to object to the inclusion of certain language in Instruction No. 1. This instruction erroneously contains the phrase "or with the intent to defile." Abduction of a person over the age of twelve with the intent to defile is not one of the predicate offenses of capital murder defined in Code § 18.2-31.* Strickler also argues that the jury found him guilty of robbery as charged in the indictment, but

---

* Code § 18.2-31 states in relevant part:
   The following offenses shall constitute capital murder, punishable as a Class 1 felony:

   . . .

   8. The willful, deliberate, and premeditated killing of a child under the age of twelve years in the commission of abduction as defined in § 18.2-48 when such abduction was committed with the intent to extort money or a pecuniary benefit, or with the intent to defile the victim of such abduction[.]

the robbery indictment did not charge him with robbery while armed with a deadly weapon. Continuing, Strickler asserts that the robbery conviction does not establish the predicate offense for the capital murder conviction.

The respondents assert, however, that Strickler's arguments are meritless. Respondents contend that Strickler was not prejudiced by Instruction No. 1 because there is overwhelming evidence that he committed a willful, deliberate, and premeditated killing of Leanne Whitlock during the commission of a robbery while armed with a deadly weapon, and the jury found Strickler guilty of this offense.

The United States Supreme Court articulated the relevant principles that we must apply here in *Strickland* v. *Washington*, 466 U.S. 668 (1984). The Court observed that "actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." *Id.* at 693. The Court held that "[e]ven if a defendant shows that particular errors of counsel were unreasonable, . . . the defendant must show that they actually had an adverse effect on the defense." *Id.* Discussing the appropriate test that we must use to ascertain prejudice, the Court stated:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

> In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law. . . . The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision.

. . .

---

This statute has been amended in several respects since the date of Strickler's offenses, but the amendments are not relevant here.

The governing legal standard plays a critical role in defining the question to be asked in assessing the prejudice from counsel's errors. When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.

. . .

In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways.

*Id.* at 694-95. Finally, the Court stated that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* at 697; *accord Poyner* v. *Murray*, 964 F.2d 1404, 1417 (4th Cir.), *cert. denied,* \_\_\_\_ U.S. \_\_\_\_, 113 S.Ct. 419 (1992).

█ The Supreme Court discussed the defendant's heavy burden of establishing prejudice in *Kimmelman* v. *Morrison,* 477 U.S. 365 (1986):

The defendant shows that he was prejudiced by his attorney's ineffectiveness by demonstrating that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' [*Strickland,* 466 U.S.] at 694. See also, *id.,* at 695 (Where a defendant challenges his conviction, he must show that there exists 'a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt'). And, in determining the existence *vel non* of prejudice, the court 'must consider the totality of the evidence before the judge or jury.'

*Id.* at 381; *accord Washington* v̇. *Murray,* 4 F.3d 1285, 1289 (4th Cir. 1993); *Spann* v. *Martin,* 963 F.2d 663, 672 (4th Cir. 1992).

The Supreme Court also observed that "*Strickland*'s standard, although by no means insurmountable, is highly demanding." *Kimmelman,* 477 U.S. at 382; *accord Fitzgerald* v. *Thompson,*

943 F.2d 463, 468 (4th Cir. 1991), *cert. denied*, ____ U.S. ____, 112 S.Ct. 1219 (1992) (*Strickland* imposes heavy burden on petitioner). As instructed by the Supreme Court in *Strickland*, we need not determine whether Strickler's trial counsel's performance was deficient because, upon application of the aforementioned principles, Strickler failed to meet his highly demanding burden of showing prejudice.

■ Code § 18.2-31 permits a jury to find a defendant guilty of capital murder for "the willful, deliberate, and premeditated killing of any person in the commission of robbery or attempted robbery while armed with a deadly weapon." The jury was properly instructed that it could find Strickler guilty of capital murder if the Commonwealth proved beyond a reasonable doubt that Strickler killed Leanne during the commission of an armed robbery. As we have already stated, the jury was properly instructed on the definition of a deadly weapon and the crime of robbery, and the jury's verdicts show that the jury found Strickler guilty of robbery. *Strickland, supra*, dictates that we presume the jury acted according to law and applied the "standards that govern the decision." 466 U.S. at 695.

■ The evidence is overwhelming that Strickler committed the willful, deliberate, and premeditated killing of Leanne Whitlock in the commission of robbery while armed with a deadly weapon. Strickler opened the door of the car that Leanne was driving, as she tried to lock the door. As Leanne tried to accelerate and sound her horn, Strickler repeatedly struck her. Later, Strickler was seen driving the blue car, with his cohorts in it, into a field. Strickler and Henderson beat Leanne, kicked her, and killed her by dropping a rock weighing 69 pounds, four ounces, on her head several times. As we have already mentioned, Strickler told Tudor that he had kicked Leanne in the back of the head, he had used a "rock crusher," and Leanne would give him "no more trouble." Thus, the record contains overwhelming evidence that the rock constituted a deadly weapon as defined by Jury Instruction No. 3.

■ The evidence is also overwhelming that Strickler committed an armed robbery of Leanne because he took the blue car that she was driving, her driver's license, identification card, bank card, earrings, and watch. The fact that Leanne may have been dead when Strickler took her jewelry and other personal property does not legally absolve him of the offense of commission of an armed robbery. We have repeatedly held that "[i]n a robbery prosecu-

tion, where the violence against the victim and the trespass to his property combine in a continuing, unbroken sequence of events, the robbery itself continues as well for the same period of time." *Linwood Earl Briley* v. *Commonwealth*, 221 Va. 532, 543, 273 S.E.2d 48, 55 (1980), *cert. denied*, 451 U.S. 1031 (1981); *accord Quesinberry* v. *Commonwealth*, 241 Va. 364, 373-74, 402 S.E.2d 218, 224, *cert. denied*, 502 U.S. ____, 112 S.Ct. 113 (1991). Here, Strickler's armed robbery of Leanne was not completed until Strickler had killed her with the rock and taken her personal property.

Upon our review of the totality of the evidence that was before the jury, particularly the overwhelming evidence that Strickler killed Leanne during the commission of an armed robbery, we hold that Strickler failed to meet his burden of showing a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Finding no merit in the assignments of error, we will affirm the judgment of the trial court.

*Affirmed.*