Present:  All the Justices

TERRY WILLIAMS

OPINION BY JUSTICE A. CHRISTIAN COMPTON

v.  Record No. 960534                    June 6, 1997

WARDEN OF THE MECKLENBURG
CORRECTIONAL CENTER

UPON A PETITION FOR A WRIT OF HABEAS CORPUS

This is the first habeas corpus petition filed by a prisoner held under a sentence of death that we have addressed in a published opinion since the applicable statute was amended effective July 1, 1995.  See Acts 1995, ch. 503.

The 1995 amendment to Code § 8.01-654 added subsection (C). It provides that this Court shall have "exclusive jurisdiction" to consider and award writs of habeas corpus with respect to any such petition filed by a convict held under a death sentence. § 8.01-654(C)(1).  The amendment further provides that the circuit court "which entered the judgment order setting the sentence of death shall have authority to conduct an evidentiary hearing on such a petition only if directed to do so by order of the Supreme Court."  Id.

The amendment fixes time limits within which the circuit court "shall conduct" a hearing on the issues enumerated in this Court's order and within which the circuit court "shall report its findings of fact and recommend conclusions of law to the Supreme Court."  § 8.01-654(C)(3).  Finally, the amendment provides that any objection to the circuit court's report must be filed in this Court, within a specified time limit.  Id.

Petitioner Terry Williams was convicted in a jury trial in

the Circuit Court of the City of Danville of the capital murder of Harris Thomas Stone.  The crime was committed in November 1985, the accused was indicted in July 1986, and the jury found him guilty in September 1986.

After a separate proceeding on the issue of punishment and after hearing evidence of the accused's history, including aggravating factors and mitigating evidence, the jury fixed his sentence at death.  This sentence was based upon the "future dangerousness" predicate of the statutory scheme; the verdict stated there is a probability that the defendant "would commit criminal acts of violence that would constitute a continuing serious threat to society."

Following a statutorily mandated hearing before the trial judge on punishment, the defendant was sentenced in November 1986 to death.  This Court affirmed the conviction and death sentence on direct appeal.  Williams v. Commonwealth, 234 Va. 168, 360 S.E.2d 361 (1987).  The United States Supreme Court refused review.  Williams v. Virginia, 484 U.S. 1020 (1988).

In August 1988, the convict filed a habeas corpus petition in the Danville Circuit Court.  After a 1989 hearing, the court dismissed a number of the habeas claims.  An amended petition was filed in April 1995, and the court heard evidence in June 1995 on the issue of ineffective assistance of trial counsel.

On July 1, 1995, jurisdiction over the case was transferred to this Court pursuant to the changes in Code § 8.01-654.

Subsequently, this Court directed the circuit court to "report its findings of fact and recommend conclusions of law regarding the issue of ineffective assistance of counsel, as alleged in claim VII" of the amended petition. In June 1996, the circuit court heard argument of counsel on the ineffective assistance of counsel claim.

In August 1996, the circuit court forwarded its report to this Court and to counsel for the parties. The circuit court found that the accused's two trial counsel were effective in all but one stage of the trial proceedings. The circuit court concluded that trial counsel's failure to present certain mitigating evidence at the sentencing hearing before the jury warranted the granting of relief to the petitioner.

Both the petitioner and the respondent, J. D. Netherland, Warden of the Mecklenburg Correctional Center, filed objections to the circuit court's rulings. In a January 1997 order, this Court ordered briefing and argument on the issue that the circuit court had found warranted relief. Petitioner's objections to the circuit court's findings recommending dismissal of all the other claims for relief were overruled.

The evidence presented in the 1986 criminal trial established the following basic facts. The victim, an elderly man, was found dead at 2:00 a.m. lying in a bed at his Danville home. He was fully clothed and there was no sign of a struggle. The victim's wallet, customarily kept fastened in his trouser

pocket, was missing.

Later, the accused made several confessions to the murder and robbery of the victim. The defendant said he had struck the victim on the chest, and later on the back, with a mattock and had removed three dollars from the victim's wallet. The victim died from the blows, which fractured two ribs and displaced them inward, puncturing the left lung and depositing a quantity of blood in the left chest cavity.

During the penalty phase of the trial, the prosecution presented evidence of the 31-year-old accused's extensive criminal record, beginning when he was 11 years old. This included a robbery in 1976, a burglary involving an assault upon the victim in 1982, and a vicious and brutal malicious wounding of an elderly woman in March 1986 that caused brain damage and left her a "vegetable." In addition, there was evidence of a December 1985 assault by the accused upon an elderly man while the accused was committing arson of the victim's home. Two forensic psychological experts who examined the accused testified there was a high probability that he would commit future criminal acts of violence and that he constituted a continuing threat to society.

The accused's mother testified that he was never violent at home and that she did not believe he was a threat to others. A female acquaintance of the accused who had known him for 11 years testified he was never violent in her presence. Another witness,

whose foster daughter had dated the accused, testified he was not a violent person.

Based on the June 1995 habeas evidentiary hearing and the subsequent argument of counsel, the circuit judge, who had presided at the trial, made a number of "findings of fact" and "recommended conclusions of law." The court found that the convict's "trial attorneys were both experienced in criminal defense work and thoroughly prepared the case in defense of capital murder." In this connection, the court concluded that counsel's "performance at the guilt phase of the trial was both professional and competent."

Elaborating, the court stated that counsel "properly explored the mental competency of" the accused, who, according to the evidence at trial, had a "borderline level of intellectual functioning." Also, the circuit court found that trial counsel "adequately investigated the issues of robbery and cause of death"; that counsel "was justified in relying on" the conclusions of the medical examiner regarding the cause of death; that counsel's "conduct with regard to the confession and suppression hearing was competent and professional"; and that they were not ineffective for their failure to investigate whether the accused suffered from a so-called "Fetal Alcohol Syndrome." Further, the court concluded that counsel performed adequately regarding voir dire, evidentiary objections, and jury instructions.

Additionally, the circuit court found that the performance of defense counsel, in the main, during the penalty phase proceedings did not warrant habeas relief. And, the court determined counsel was effective on appeal.

The court reported, however, that certain actions of counsel during the trial's penalty phase were "the only real concern." "Specifically," the court said, "little evidence was presented on the issue of mitigation, and there exists evidence that petitioner had a deprived and abused upbringing; that he may have been a neglected and mistreated child; that he came from an alcoholic family; and that he was borderline mentally retarded."

Continuing, the court said there also exists "evidence that petitioner's conduct had been good in certain structured settings in his life (such as when he was incarcerated) and there were friends, neighbors and family of petitioner who would have testified that he had redeeming qualities." The court was of the view that some of this testimony "such as [from] petitioner's wife, daughter and Bruce Elliott, was worthy of a jury's consideration on mitigation. However, none of this testimony was developed and presented at the sentencing phase of the trial."

The court stated: "Probably the most persuasive mitigating evidence which was not tendered to the jury involved the failure to interview and call Bruce Elliott as a witness during the sentencing phase." Elliott, a certified public accountant, contacted defense counsel prior to trial and offered his help,

but, according to the court, "counsel never followed up by talking to the witness."  The court found that Elliott had known the accused since 1978 and would have portrayed the accused "as a decent human being who struggled to prove his worth in spite of his being somewhat disadvantaged mentally, emotionally and financially."  Elliott, who did not testify at the habeas hearing, stated in an affidavit that the accused "took pride in his achievements," such as graduation from carpentry school while incarcerated in a correctional facility.

The court found that trial counsel "made a tactical decision to focus attention at the penalty phase" on the accused's confession, which was unsolicited and volunteered.  Counsel's strategy, the court concluded, was to convince the jury that the accused's life should be spared, and that he should be given a life sentence, because of the unsolicited confession.

Also, the court said that counsel "made a tactical decision not to put certain witnesses before the jury to prevent the Commonwealth from reminding the jury of the `horrible and terrible crimes'" committed by the accused.  Nevertheless, the court said, "it is troubling . . . that favorable evidence was not pursued and introduced for `whatever it was worth' when the decision which was to be made by the jury involved <u>life or death</u>."

Summarizing, the court opined that at "a capital murder sentencing, <u>any</u> evidence which might be favorable or mitigating

can mean the difference between `life or death.'"  Continuing, the court stated that "mitigating testimony is absolutely crucial and if none is offered, this amounts to prejudice."  In addition, the court said that a failure "to present favorable mitigation evidence which was available upon investigation and development falls below the range expected of reasonable, professional competent assistance of counsel, and because this evidence is so crucial to the outcome of the jury's ultimate decision of life or death, it is prejudicial to a defendant when it is not presented at the sentencing phase."  This is such a case, according to the court, because "Terry Williams needed anything and everything that might be available as favorable evidence to persuade the jury to save his life.  Anything less was not enough."

Therefore, the court recommended that a writ of habeas corpus be granted and that the convict be granted a rehearing on the sentencing phase of his trial.

The right to counsel, guaranteed by the Sixth Amendment to the Federal Constitution and made applicable to the states through the Fourteenth Amendment, includes the right to effective assistance of counsel.  Murray v. Griffith, 243 Va. 384, 388, 416 S.E.2d 219, 220 (1992) (citing Virginia Dep't of Corrections v. Clark, 227 Va. 525, 533, 318 S.E.2d 399, 403 (1984)).  This constitutional guarantee "includes the right to the care and skill which a reasonably competent attorney would exercise for similar services under the circumstances."  Stokes v. Warden, 226

Va. 111, 116-17, 306 S.E.2d 882, 884 (1983). In other words, the accused is entitled to counsel who is a reasonably competent attorney and to advice that is within the range of competence demanded of attorneys in criminal cases. Strickland v. Washington, 466 U.S. 668, 687 (1984).

In a collateral attack on a conviction, however, "a prisoner not only has the burden of proving ineffective assistance of counsel, but also must prove actual prejudice as a result." Stokes, 226 Va. at 118, 306 S.E.2d at 885. Accord Strickland, 466 U.S. at 687; Murray, 243 Va. at 388, 416 S.E.2d at 221. In order to establish prejudice, there must be a showing "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. at 691.

In sum, Strickland requires a prisoner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. And, in determining the existence of prejudice, the court must consider the totality of the evidence presented at the criminal trial. Id. at 695. Accord Strickler v. Murray, 249 Va. 120,

128, 452 S.E.2d 648, 652, cert. denied, ___ U.S. ___, 116 S.Ct. 146 (1995).

"As is obvious, Strickland's standard, although by no means insurmountable, is highly demanding." Kimmelman v. Morrison, 477 U.S. 365, 382 (1986). Accord Strickler, 249 Va. at 128, 452 S.E.2d at 652. Moreover, "an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." Lockhart v. Fretwell, 506 U.S. 364, 369 (1993). And, "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant a defendant a windfall to which the law does not entitle him." Id. at 369-70.

Further, we have adopted the Strickland suggestion, 466 U.S. at 697, that if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. Strickler, 249 Va. at 128, 452 S.E.2d at 652. We shall employ that procedure in the present case.

This brings us to a determination of the standard of review that we shall apply to the circuit court's findings of fact and conclusions of law. We hold that, under the 1995 amendment to Code § 8.01-654, the issue whether a prisoner held under a death sentence is entitled to habeas relief is a mixed question of law and fact. Therefore, a circuit court's finding and conclusion on the issue is not conclusive and binding upon this Court but is

properly subject to judicial review.  See The Stenrich Group v. Jemmott, 251 Va. 186, 192, 467 S.E.2d 795, 798 (1996).  Indeed, this is the standard of review employed in similar cases in the federal system.  The Supreme Court has said "that both the performance and the prejudice components of the ineffectiveness test are mixed questions of fact and law" and that "a state court's ultimate conclusions regarding competence and prejudice are not findings of fact binding on the federal court."  Kimmelman, 477 U.S. at 388-89 (citing Strickland, 466 U.S. at 698).

In the present case, the factual part of the mixed question is whether there was evidence in mitigation that was available but not presented at the criminal trial.  There is no doubt there was such evidence; the facts really are not in dispute.  The legal part of the mixed question is whether this deficient performance constitutes "prejudice" within the meaning of that term as defined by the decided cases.  In resolving this part of the question, the crucial inquiry is whether the circuit court correctly applied the law to the established facts.  We hold that it did not.

In his brief filed in this Court in support of the circuit court's conclusions, the prisoner dwells upon the facts relating to the performance prong of the Strickland test, and has comparatively little to say about circumstances relating to the prejudice prong.  He says there is "no merit" to the respondent's

contention "that presentation of any additional witnesses would have done Petitioner more harm than good as each new witness would only give the prosecutor a renewed opportunity to hammer home the details of Petitioner's checkered criminal past."

Reverting to a discussion of performance in a prejudice section of his brief, the prisoner states: "In any event, even if counsel had sought to discover [available mitigation evidence of which counsel was ignorant], fear of `opening the door' with each witness - to a repetition of Petitioner's criminal history - is not a reasoned decision given the facts of this case." Continuing, he argues that the prosecutor's "relentless recitation of Petitioner's bad acts had already been detailed for the jury through twelve different witnesses before Petitioner's counsel even stepped up to the plate. Any door that trial counsel feared would be opened by the presentation of additional mitigation witnesses had already been swung wide with gusto," and no amount of vigorous cross-examination by the prosecutor "could have left the jury feeling any worse about Petitioner than they had at the conclusion of the prosecutor's case."

The prisoner argues there "is a `reasonable probability' that at least one juror would have been moved to spare Petitioner's life had he heard" the mitigation evidence developed at the habeas hearing that was not presented at the trial. Summarizing, he contends there "is a `reasonable probability' that had at least one juror heard <u>any</u> of this evidence -- let

alone all of this evidence -- the outcome of this case would have been different."

We reject these contentions.  The prisoner's discussion flies in the face of the Supreme Court's admonition in Lockhart, supra, that "an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."

We shall demonstrate that the criminal proceeding sentencing defendant to death was not fundamentally unfair or unreliable, and that the prisoner's assertions about the potential effects of the omitted proof do not establish a "reasonable probability" that the result of the proceeding would have been different, nor any probability sufficient to undermine confidence in the outcome.  Therefore, any ineffective assistance of counsel did not result in actual prejudice to the accused.

The jury was presented with the murder of an intoxicated, elderly person in his own bedroom committed by a 31-year-old man.  The murder weapon was a tool customarily used to dig stumps.  At the time, defendant had been out of the penitentiary for only seven months, released on parole for convictions of burglary and grand larceny.

The accused was in the midst of a crime spree, preying upon defenseless individuals.  Following commission of these crimes of murder and robbery in November 1985, the defendant savagely beat an elderly woman about her head in March 1986, leaving her lying

in the street unconscious with multiple injuries.  At the time of trial, she was in a nursing home "vegetating" from a brain injury with no hope of recovery.

Upon being questioned in April and May 1986 about the November 1985 crimes, the defendant admitted to the recent theft of two motor vehicles.  He also admitted setting fire to clothes on the porch of a residence late one night in December 1985, luring the occupant outside, and stabbing him with a knife in order to rob him.  The accused later was convicted of the vehicle thefts and, at the time of trial for the present crimes, had been convicted of an arson that took place in the city jail.

While held in jail on the present offenses, he related to a police officer "that he wanted to just choke some of the guys in the jail cell, and one day some had gone to the library and one guy was laying on the bed, and he got the urge to just go over and choke him.  Another time he was playing cards and he thought he could just hit someone and break that person's jaw without him ever knowing what hit him."

The jury also heard that defendant had served time in the penitentiary for an armed robbery committed when he was about 20 years old.  The jury did not know of 14 criminal offenses committed by defendant from 1966 to 1975.

Drawing on Strickland, we hold that, even assuming the challenged conduct of counsel was unreasonable, the prisoner "suffered insufficient prejudice to warrant setting aside his

- 14 -

death sentence," 466 U.S. at 698-99, the predicate of which was that there is a probability that he would commit criminal acts of violence which would constitute a continuing serious threat to society. The mitigation evidence that the prisoner says, in retrospect, his trial counsel should have discovered and offered barely would have altered the profile of this defendant that was presented to the jury. At most, this evidence would have shown that numerous people, mostly relatives, thought that defendant was nonviolent and could cope very well in a structured environment. Of course, those assumptions are belied by the four-month crime spree beginning with the present crimes and by the defendant's current attitude while in jail toward other inmates.

What the Supreme Court said in Strickland applies with full force here: "Given the overwhelming aggravating factors, there is no reasonable probability that the omitted evidence would have changed the conclusion that the aggravating circumstances outweighed the mitigating circumstances and, hence, the sentence imposed." 466 U.S. at 700. Indeed, disclosure of the defendant's juvenile history might even have been harmful to his case.

Unfortunately, the circuit court appears to have adopted a per se approach to the prejudice element. The court opined that "any evidence which might be favorable or mitigating can mean the difference between `life or death'"; that "mitigating testimony

is absolutely crucial and if none is offered, this amounts to prejudice"; and that the accused "needed anything and everything that might be available as favorable evidence to persuade the jury to save his life.  Anything less was not enough."  This demonstrates an emphasis on mere outcome determination, without proper attention to whether the result of the criminal proceeding was fundamentally unfair or unreliable.

In conclusion, employing the language of <u>Strickland</u>, the prisoner "has made no showing that the justice of his sentence was rendered unreliable by a breakdown in the adversary process caused by deficiencies in counsel's assistance.  [The prisoner's] sentencing proceeding was not fundamentally unfair."  466 U.S. at 700.

Accordingly, the petition for a writ of habeas corpus, as amended, will be denied.

<u>Writ denied</u>.