Present: Carrico, C.J., Compton, Lacy, Hassell, Keenan, and Kinser, JJ., and Poff, Senior Justice

DAVID P. CURO, ADULT
PROBATION OFFICER

v. Record No. 962366    OPINION BY JUSTICE CYNTHIA D. KINSER
                                           October 31, 1997
HELIANTHE DENT CINDY BECKER

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Thomas D. Horne, Judge

In this appeal, the sole issue is whether the circuit court erred by awarding Helianthe Dent Cindy Becker a Writ of Habeas Corpus on the basis that Becker was denied effective assistance of counsel. Because we conclude that the attorney's representation was not deficient, we will reverse the judgment of the circuit court.

In March 1993, a jury convicted Becker of arson, and on September 27, 1993, the trial court sentenced her to two years of incarceration, suspended, and probation. After exhausting the direct appeal process, Becker filed a Petition for Writ of Habeas Corpus and asserted ineffective assistance of counsel based on numerous alleged deficiencies. The circuit court[1] held a plenary hearing on August 21, 1996, and issued its decision in a letter memorandum dated September 3, 1996. The court concluded that Becker's trial counsel had failed to conduct both a meaningful review of the underlying data relied upon by the forensic expert and an effective cross-examination of the expert. Because of these errors, the court found that

_____

[1] The same judge presided at Becker's original trial for arson and at the habeas hearing.

the attorney's representation of Becker fell below the standard

for reasonably effective assistance of counsel, and that, but

for the errors, the outcome of the trial would have been

different.  Specifically, the court stated:

> In this circumstantial evidence case, in which the
> testimony of the expert was critical to the
> Commonwealth's proof, a failure to fully examine both
> the conclusions and the basis for the conclusions of
> such expert not only is unreasonable but likely to
> have affected the ultimate outcome of the case.

In an order entered on September 23, 1996, the court vacated

Becker's arson conviction and awarded her a new trial.  In a

separate order, it denied David P. Curo's[2] Motion for

Reconsideration.[3]

## I.

"One attacking a judgment of conviction in a habeas corpus

proceeding has the burden of proving by a preponderance of

evidence the allegations contained in [the] petition."  Nolan

v. Peyton, 208 Va. 109, 112, 155 S.E.2d 318, 321 (1967).

Because entitlement to habeas relief is a mixed question of law

and fact, the circuit court's findings and conclusions are not

binding upon this Court, but are subject to review to determine

whether the circuit court correctly applied the law to the

---

[2] Throughout this proceeding, appellant's name has been spelled "Curo" and "Curro."  We are using the spelling that appears in our order awarding the appeal.

[3] The circuit court found no merit in Becker's other allegations in her Petition for Writ of Habeas Corpus.  Becker did not assign cross-error to that finding.  See Rule 5:9 and Rule 5:17(c).

2

facts.  <u>Williams v. Warden of Mecklenburg Correctional Ctr.</u>,
254 Va. l6, 24, 487 S.E. 2d l94, l98 (1997).  We hold that it
did not.

## II.

To understand the significance of the evidence at the
habeas corpus hearing, we must first review the evidence
presented at Becker's trial.  Becker testified that on the
morning of April 30, 1992, she had planned to meet with her
attorney to prevent an impending foreclosure on her farm.  She
had called to prearrange a taxi the previous evening, but when
the taxi arrived that morning at the appointed time, Becker was
not ready to leave.  She asked the taxi driver to return a
little later.  After the taxi left, Becker walked to the end of
the driveway to close the gate and also to gather some bark to
put on a fire in the fireplace in her den that she had ignited
earlier with fire starter logs.  She then ate her breakfast and
went to the barn, located behind her house, to get some tools
she had promised to give to another individual.

Becker testified that, while in the barn, she heard a
noise and smelled "something like lacquer."  Upon leaving the
barn, Becker discovered that her house was on fire.  By this
time, the taxi driver had returned, and the taxi was parked in
Becker's driveway.  Both Becker and the taxi driver saw smoke
coming out a door and some windows.  Becker testified that she
went to the door and opened it, but she was not certain whether

she actually went inside.  Since Becker did not have a telephone, the taxi driver took her to a neighbor's house to call for help.  When she returned to her home, flames were shooting out the windows.  Becker tried to enter the house, but people at the scene prevented her from going in.  Later, Becker went to a hospital by ambulance.

Pat Brandenburg, a lieutenant with the Loudoun County Fire Marshall's Office, investigated the fire at Becker's home to determine the cause and the origin of the fire.  He concluded that there were multiple points of origin, that an incendiary means caused the fire, and that the fire was the result of arson.  During his investigation, he found boxes of Becker's personal items in the barn wrapped in newspaper bearing the same date as that of the fire.[4]  Brandenburg also collected several items of evidence that he submitted to the Commonwealth of Virginia, Division of Forensic Science, for analysis.  The items included debris from the fire scene, a piece of "control wood" from the flooring material, liquid found in a gasoline can outside Becker's house, a tan skirt found inside the barn, a yellow shirt that Becker wore on the day of the fire, blue jeans, and a pair of shoes.[5]

---

[4] Becker testified that she had been packing items the night before the fire.  The newspaper was available on the afternoon prior to its actual date.

[5] Brandenburg did not personally collect the tan skirt, yellow shirt, blue jeans, or shoes; he received them from Investigator Merchant of the Loudoun County Sheriff's Office.

At trial, Eileen A. Davis, a forensic scientist with the Commonwealth of Virginia, Division of Forensic Science, testified regarding the results of the analyses on these items. Using a gas chromatograph, Davis concluded that the liquid found in the gasoline can was a mixture of petroleum distillates of the gasoline and fuel oil types. Likewise, some of the debris samples from the scene and the yellow shirt contained the same mixture.[6] She found no difference in the nature of the petroleum mix on these items but acknowledged that she could neither identify the specific type of commercial gasoline nor state that the fuel oil on the yellow shirt was the same type as that found on the debris. Finally, Davis acknowledged some starter logs contain fuel oil distillates.

At the subsequent evidentiary hearing on her habeas petition, Becker's claim of ineffective assistance of counsel focused on the forensic evidence. She offered evidence from an analytical chemist, Keith Flohr, regarding the chromatographic charts that Davis' testing produced. Flohr concluded that the raw data on the charts were reliable and the results of appropriate testing.[7] He agreed with Davis' conclusion that

---

[6] Davis found no petroleum distillates on the blue jeans, tan skirt, or piece of control wood. On the shoes, she found characteristics of a petroleum distillate of the gasoline type but could not make a more definitive determination.

[7] Flohr did not repeat any testing of the items but reached all his conclusions based upon the chromatographic charts prepared by the Division of Forensic Science.

the blue jeans did not contain any appreciable amount of petroleum distillate.[8]  Flohr's most critical conclusion, based on his interpretations of the tracings on the chromatographic charts, was that the petroleum distillate found on the yellow shirt came from exposure to smoke and not from exposure to gasoline or fuel vapor.

Davis also testified at the evidentiary hearing on the habeas petition and did not agree with Flohr's analysis.  She stated that "you cannot tell whether it was a vapor, whether it was a liquid, whether it was splashed, whether it was pre-existing, that there is no way to tell, looking at the chromatograms, to make that determin[ation]."

Becker's trial attorney recognized that the prosecution's most compelling evidence directly linking Becker to the fire was the substance on the yellow shirt.  However, Becker's trial attorney was satisfied with Davis' admission that she could not determine if the distillate on the shirt was the same type as that on the debris.  Becker's trial attorney believed that Davis' admission coupled with the statement that some fire starter logs contain fuel oil distillates corroborated the defense theory that the distillate on the yellow shirt came

---

[8] According to Flohr, the absence of distillate on the blue jeans indicated that Becker did not pour the accelerant in the house.  First, he explained that gasoline has a low surface tension and thus splashes easily.  Second, when one comes in contact with the gasoline, most of it, but not all, will evaporate.

from the logs.  Because she believed this defense was viable, Becker's trial attorney did not employ an expert to check Davis' work, obtain the chromatographic charts, or ask Davis whether the distillate on the yellow shirt might have come from smoke.

## III.

"The right to counsel which is guaranteed by the Sixth Amendment to the Federal Constitution and made applicable to the States through the Fourteenth Amendment includes the right to effective assistance of counsel."  Virginia Dep't. of Corrections v. Clark, 227 Va. 525, 533, 318 S.E.2d 399, 403 (1984).  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  Strickland v. Washington, 466 U.S. 668, 686 (1984).  "In other words, the accused is entitled to counsel who is a reasonably competent attorney and to advice that is within the range of competence demanded of attorneys in criminal cases."  Murray v. Griffith, 243 Va. 384, 388, 416 S.E.2d 219, 221 (1992) (citing Strickland, 466 U.S. at 687).

In Strickland v. Washington, the Supreme Court of the United States enunciated a two-part test for judging claims of ineffective assistance of counsel in a collateral attack on the conviction.  "First, the defendant must show . . . that counsel

made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. The second element of the test requires the defendant to show "that the deficient performance prejudiced the defense." Id. Unless the defendant satisfies both elements, the claim of ineffective assistance will fail. Id.

In applying this two-part test, the Supreme Court cautioned against second-guessing counsel's representation through hindsight. Instead, the Court stated that "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Furthermore, the Court recognized that "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." Id. at 691.

This last admonition is determinative of the present case. Becker's theory of ineffective assistance of counsel rests on the trial attorney's failure to develop the forensic evidence. Becker claims that her attorney erred by not obtaining the chromatographic charts and procuring expert testimony such as that offered at the habeas hearing by Flohr to establish that the distillate on the yellow shirt might have come from smoke rather than from gasoline or fuel vapor. Becker also contends

8

that her attorney's failure to understand the methodology and data led to an ineffective cross-examination of the expert.

The above theory erroneously presupposes that Becker had not previously offered any explanation for the presence of the distillate on the yellow shirt. However, Becker had told her attorney that she had used fire starter logs that morning, and she attributed the presence of distillate on her shirt to her handling of those logs. Upon investigating this explanation, Becker's attorney learned three important things from Davis: (1) that some fire starter logs contain fuel oil distillates; (2) that Davis could not distinguish between specific types of fuel oil; and (3) that Davis would admit that she could not determine whether the petroleum distillate found on debris taken from the fire scene and that found on the yellow shirt were the same type.

Despite this defense premised on information from Becker, the circuit court concluded that Becker's attorney erred in the manner in which she developed the forensic evidence and cross-examined Davis. That judgment, however, runs afoul of the instructions in Strickland. "[W]hen the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether." Strickland, 466 U.S. at 691. Because the attorney developed a defense based on Becker's version of

9

the events, we cannot now say that the representation "fell below an objective standard of reasonableness" just because the attorney did not also investigate alternative defenses.  Id. at 688.

For these reasons, we conclude that Becker was not denied the effective assistance of counsel guaranteed by the Sixth Amendment.  Since Becker has not shown that her trial attorney's performance was deficient, we do not need to address the prejudice element of the Strickland test.  We hold, therefore, that the circuit court erred in granting the Writ of Habeas Corpus.  Accordingly, the judgment of the circuit court will be reversed and vacated, and final judgment will be entered here dismissing Becker's Petition for Writ of Habeas Corpus.

Reversed and final judgment.