Present:  All the Justices

CALVIN LAMONT BOWMAN, SR.

v.  Record No. 102471    OPINION BY JUSTICE DONALD W. LEMONS
                                      November 4, 2011
GENE M. JOHNSON, DIRECTOR,
VIRGINIA DEPARTMENT OF CORRECTIONS

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
R. Terrence Ney, Judge

In this appeal, we consider whether the Circuit Court of Fairfax County erred in denying a writ of habeas corpus to Calvin Lamont Bowman ("Bowman").

I. Facts and Proceedings Below

A. Procedural History

On August 1, 2006, Bowman was arrested for a bank robbery that occurred at a BB&T bank branch in Fairfax County on July 28, 2006, at approximately 11:00 a.m.  Bowman was found guilty by a jury on March 5, 2008, in the Circuit Court of Fairfax County of robbery, abduction, and two counts of use of a firearm during the commission of a felony.  He was sentenced to twenty-eight years' imprisonment.

Bowman appealed his convictions to the Court of Appeals and to this Court; however, both the Court of Appeals and this Court denied Bowman's petitions for appeal.  Bowman v. Commonwealth, Record No. 0631-08-4 (Sept. 24, 2008); Bowman v. Commonwealth, Record No. 082558 (June 1, 2009).

1

Bowman subsequently filed a petition for a writ of habeas corpus ("petition") in the Circuit Court of Fairfax County[1] on May 3, 2010, making four claims.  In an order entered on August 12, 2010, the habeas court held that Bowman's first claim was "procedurally defaulted" and "could have been raised at trial and on direct appeal and was not."  On Bowman's other three claims, the habeas court held Bowman failed to prove his attorney's performance was deficient or prejudicial as required under Strickland v. Washington, 466 U.S. 668 (1984), and his attorney's trial strategy "easily satisfie[d] the highly deferential standard of review under Strickland."

### B. Bowman's Criminal Trial

Prior to trial, pursuant to a discovery order, the Commonwealth provided Bowman's attorney, Ms. McGennis Williams ("Williams"), with, among other materials, the following: NOVARIS[2] latent fingerprint examination results; Bowman's Miranda waiver; photographs of the robbery in progress; and a certificate of analysis proving Bowman's DNA did not match the DNA on a glove found in the getaway vehicle.

---

[1] For clarity, references to Bowman's underlying criminal trial will utilize the phrase "trial court," and references to Bowman's habeas corpus proceeding will utilize the phrase "habeas court."

[2] NOVARIS stands for Northern Virginia Regional Identification System, an agency hosted by the Fairfax Police Department.

The evidence against Bowman at trial included testimony from three "eyewitnesses" to the robbery, Chen Chen ("Chen"), Sirisha Alaparthi ("Alaparthi"), and Samuel L. Appelbaum ("Appelbaum"). Also, two detectives with the Fairfax County Police Department, Detectives Matt Anderson ("Anderson") and Stephen Needels ("Needels"), testified. Additionally, the Commonwealth's fingerprint expert, Detective William Reeves ("Reeves"), and a crime scene detective, Detective Geoffrey E. Miller ("Miller"), presented testimony at trial.

None of the "eyewitnesses" were able to identify Bowman as one of the robbers. Chen testified that two African American males entered the bank, and one "pulled a gun yelling at us," and the other "jump[ed] over the teller line, teller counter, and he start[ed] to take money from the teller drawers." Alaparthi testified that two men entered the bank, and one of the robbers "came to me, grabbed my collar and left me in my manager's office" before he jumped the teller counter. Appelbaum testified that one of the robbers "raised up his arms and said, everybody down on the ground," and that Appelbaum "heard [the robbers] open up [his] drawer and take all the money out."

Anderson testified that he and Needels viewed surveillance pictures, which "gave [them] an idea of where the suspects had moved through the bank." Anderson stated that he processed the

3

area surrounding teller station number two for fingerprints while Hardy processed the area surrounding teller station number four. Reeves testified that he took Bowman's fingerprints to compare to the fingerprints lifted from teller stations two and four by Anderson and Hardy. Reeves further testified that Bowman's fingerprints matched fingerprints lifted from the glass counter and window at teller stations two and four, where the photographs showed one of the robbers vaulting the bank counter.

Anderson testified that impressions from footwear were on the teller's counter. Evidence presented at trial revealed that the tread of the boots recovered from Bowman after his arrest matched the shoe prints on the bank counter. Miller testified that he compared Bowman's boots with the photographs of the shoe prints and found three identical characteristics – the size, the design, and the anatomical wear of the footwear.

During cross examination, Williams asked Needels whether he took a buccal swab, which she referred to as a "DNA swab," of Bowman's mouth, and he replied, "I believe so." Williams then asked Needels if he sent the DNA swab to the Division of Forensic Science, and he responded, "I did not," and "I do not believe the DNA was ever submitted."

At a bench conference, the prosecutor explained to the trial judge the reason that the DNA swab was not submitted to

4

the forensic laboratory for testing was "because the Defendant confesse[d] to the bank robbery." Williams stated she did not know the reason Bowman's DNA swab was not tested and declared that "if we had better discovery, I would have known that and I wouldn't have brought it up." Significantly, Bowman's confession had been ruled inadmissible in pre-trial proceedings.

The prosecutor asked for an instruction to the jury that the case had nothing to do with DNA "because it leaves the impression that the detectives did not do everything they could when the reason that they didn't is legitimate." The parties agreed the trial court should instruct the jury that "DNA analysis has nothing to do with this case," and "the fact that a swab may have been done is completely irrelevant to the issue put to you for decision." In fact, the DNA swab was sent to the forensic laboratory, and the results were in the possession of both the prosecutor and defense counsel.

### C. Bowman's Habeas Corpus Proceeding

On May 3, 2010, Bowman filed his petition, claiming that: (a) the Commonwealth failed to correct false testimony by its witness; (b) he was denied the effective assistance of counsel because his attorney failed to present exculpatory DNA evidence on a glove and t-shirt provided to her by the prosecutor; (c) he was denied the effective assistance of counsel because his

5

attorney presented inculpatory fingerprint evidence and failed to cross-examine the Commonwealth's witness regarding a fingerprint from the bank counter having been lifted twice; and (d) he was denied the effective assistance of counsel when his attorney accepted a cautionary instruction instead of asking for a mistrial.

Gene M. Johnson, Director of the Virginia Department of Corrections (the "Director"), filed a motion to dismiss Bowman's petition on June 17, 2010. The Director argued that Bowman's first claim regarding the alleged false testimony could have been raised at trial and on direct appeal, and pursuant to Slayton v. Parrigan, 215 Va. 27, 29, 205 S.E.2d 680, 682 (1974), cert. denied, 419 U.S. 1108 (1975), is not cognizable in a petition for habeas corpus. The Director further argued that Bowman's second, third, and fourth claims alleging ineffective assistance of counsel failed to meet either the "performance" or the "prejudice" prong of the two-part test set forth in Strickland, 466 U.S. at 687.

The habeas court ruled in its August 12, 2010 order that Bowman's claim that "[t]he Commonwealth failed to correct the false testimony of its witness" was "procedurally defaulted" and "could have been raised at trial and on direct appeal and was not." The habeas court also dismissed each of Bowman's claims that he was denied effective assistance of counsel

6

pursuant to Strickland.  On August 16, 2010, Bowman filed a

motion to vacate the August 12, 2010 order, and a suspending

order was entered by the habeas court on September 1, 2010.

Then on September 29, 2010, the habeas court dismissed Bowman's

Petition for Habeas Corpus "for the reasons set out in the

Order of August 1[2], 2010."[3]

Bowman timely filed his petition for appeal, and we

granted Bowman's appeal on the following assignments of error:

1. Finding that Petitioner's issues[4] could have been raised
   on direct appeal, despite the failure to present them in
   the trial court, as required by Rule 5A:18.

2. Ignoring Napue v. Illinois, 360 U.S. 264 (1959), and the
   issue of the Commonwealth's false representation that
   there had been no DNA comparison of Mr. Bowman's DNA with
   DNA seized from the getaway vehicle, which had occurred
   and exculpated him and, addressing, instead, who had
   submitted the evidence for testing; a non-issue.

3. Finding defense counsel's failure to present DNA evidence
   eliminating Bowman as a robber and a test of a t-shirt,
   also eliminating him as a robber was a tactical decision
   when the lawyer swore that it was not and could not say
   that she had even interviewed the analysts though she had
   copies of their test results months before trial.

4. Finding that the Petition did not proffer the t-shirt
   examiner's testimony when his test results were stated,
   adopted and incorporated in the Petition.

---

[3] The habeas court actually stated "in the Order of August
17, 2010;" however, no such order exists.  The only possible
order the habeas court could have been referencing was the
order entered on August 12, 2010.
[4] "Petitioner's issues" refer to claims (a) through (d)
raised by Bowman in his petition filed in the habeas court.

5. Finding defense counsel's corroboration of prosecution finger print evidence, instead of impeaching it, was "cumulative" and not prejudicial.

## II. Analysis

### A. Standard of Review

It is well-established that "[o]ne attacking a judgment of conviction in a habeas corpus proceeding has the burden of proving by a preponderance of evidence the allegations contained in [the] petition." Nolan v. Peyton, 208 Va. 109, 112, 155 S.E.2d 318, 321 (1967) (citing Smyth v. Morrison, 200 Va. 728, 732, 107 S.E.2d 430, 433 (1959)). The determination whether one is entitled to habeas relief "is a mixed question of law and fact." Hash v. Director, Dep't of Corr., 278 Va. 664, 672, 686 S.E.2d 208, 212 (2009) (quoting Curo v. Becker, 254 Va. 486, 489, 493 S.E.2d 368, 369 (1997) (citing Williams v. Warden, Mecklenburg Corr. Ctr., 254 Va. 16, 24, 487 S.E.2d 194, 198 (1997))). Additionally, "the [habeas] court's findings and conclusions are not binding upon this Court, but are subject to review to determine whether the [habeas] court correctly applied the law to the facts." Id. (quoting Curo, 254 Va. at 489, 493 S.E.2d at 369) (citing Williams, 254 Va. at 24, 487 S.E.2d at 198).

### B. Assignment of Error One

Bowman alleges that the habeas court erred in finding that his "issues could have been raised on direct appeal." In its

8

order of September 29, 2010, the habeas court stated: "[t]he errors complained of now could have been raised on appeal but were not." In the same order, however, the habeas court dismissed Bowman's petition "for the reasons set out in the Order of August 1[2], 2010." Additionally, the habeas court's September 29, 2010 order reinstated the August 12, 2010 order. With the exception of the issue raised in assignment of error two, the reasons stated in the prior order for the remaining issues were based upon a Strickland analysis and not a Slayton analysis. On appeal, we will consider the issues raised by assignments of error three, four, and five as not barred by Slayton and will consider them on the merits under Strickland.

## C. Assignment of Error Two

Bowman argues that the Commonwealth violated his right to a fair trial when the prosecutor knowingly permitted his witness to testify falsely. Of course, we must consider Bowman's assignments of error in the context of the actual claims made in his habeas corpus petition. In his petition, he maintains that "the Commonwealth failed to correct false testimony by its witness." In support of his argument, Bowman relies primarily on Napue v. Illinois, 360 U.S. 264 (1959). However, Bowman's situation is quite different than that presented in Napue.

9

In Napue, four men including the defendant entered a dimly-lit bar and announced their intention to commit a robbery. 360 U.S. at 265. One of the customers was an off-duty police officer who fired upon the robbers. One of the robbers was killed as was the police officer. Another of the robbers was wounded. The wounded robber, who had already received a prison term of 199 years for his participation in the crime, testified against Napue at Napue's trial. Id. at 265-66. The prosecutor asked the witness if he had received a promise or a reward for his testimony, and the witness denied any such arrangement. Id. at 267 n.2. Napue was convicted and sentenced to 199 years in jail. Id. at 266. After his conviction, it was discovered that the prosecutor had made a promise to the witness to seek a reduction in the witness' sentence in return for his testimony against Naupe. Id. at 266-67.

The most significant difference between Napue and this case has to do with when the information was known. In Napue, the information became known to Napue post-conviction. In this case, the information was available to Bowman prior to trial.

Non-jurisdictional claims that could be raised at trial and on appeal are not cognizable in a habeas corpus proceeding. Slayton, 215 Va. at 29, 205 S.E.2d at 682. We have previously concluded that "[a]bsent any indication that counsel or

10

petitioner <u>knew or should have known</u> of the complained of conduct at a time when the trial court could address the misconduct allegations, the procedural bar in <u>Slayton</u> does not apply." <u>Lenz v. Warden, Sussex I State Prison</u>, 267 Va. 318, 326, 593 S.E.2d 292, 296 (2004) (emphasis added). Here, before trial, Williams received a copy of the certificate of analysis that proved Bowman's DNA did not match the DNA from the glove found in the getaway vehicle. Despite her failure to utilize such evidence, Williams knew of the exculpatory DNA evidence during Bowman's trial. It must be emphasized that Bowman's claim focuses upon alleged inaction by the Commonwealth rather than his own counsel.

Accordingly, we hold that Bowman's claim that the Commonwealth failed to correct false testimony of its witness is barred because this non-jurisdictional issue could have been raised at trial and on appeal. <u>Slayton</u>, 215 Va. at 29, 205 S.E.2d at 682. Additionally, Bowman argues that the habeas court improperly ignored <u>Napue</u>. The record clearly demonstrates that the habeas court did not ignore <u>Napue</u>; rather, it correctly held that the claim was barred by <u>Slayton</u>.

D. Assignments of Error Three, Four, and Five

Bowman's remaining claims covered by his assignments of error allege that the habeas court erred in finding that: (a) it was a tactical decision of counsel not "to present DNA

11

evidence eliminating Bowman as a robber and a test of a t-shirt, also eliminating him as a robber;" (b) the habeas petition "did not proffer the t-shirt examiner's testimony when his test results were stated, adopted and incorporated in the Petition;" and (c) "defense counsel's corroboration of prosecution finger print evidence, instead of impeaching it, was 'cumulative' and not prejudicial."

In Strickland, the United States Supreme Court established a two-prong test to assess whether an attorney's representation was ineffective.  466 U.S. at 687.  To prevail on an ineffective assistance of counsel claim, Bowman must satisfy both the "performance" prong and the "prejudice" prong under Strickland.  Id.  To satisfy the first component of the Strickland test, "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 688.  Under the second component, "the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Id. at 687.

In deciding Bowman's ineffective assistance of counsel claim, we need not address the Strickland components in a particular order or even address both components of the inquiry.  Id. at 697.  If Bowman makes an insufficient showing

12

on either component of the Strickland test, we need not consider the other. Id.

Accordingly, we will focus upon the prejudice analysis. In analyzing the "prejudice" component, we must consider the totality of the evidence before the habeas court. Lewis v. Warden, Fluvanna Corr. Ctr., 274 Va. 93, 113, 645 S.E.2d 492, 504 (2007). However, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691. In order to prove the judgment was affected by counsel's errors,

> [t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome. . . . [T]he question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.

Id. at 694-95.

Bowman maintains that he was prejudiced because counsel failed to use the absence of his DNA from the glove recovered from the getaway van to his advantage at trial. Photographs of the robbery show two robbers in the bank. It appeared that the robber who vaulted the counter was not wearing gloves. The Commonwealth argues that Bowman vaulted the teller counter at

13

position 2 to get behind the counter and at position 4 to come back over the counter. His fingerprints were found at both places and were consistent with the direction he was heading at each position. Furthermore, the existence of the prints on the counter is inconsistent with the robbers' wearing gloves inside the bank. We hold that evidence of the lack of Bowman's DNA on the glove did not prejudice him under the Strickland standard.

The evidence at trial indicated that a red dye pack inserted within the package of money taken from the bank exploded, and items in the getaway van were stained with dye. Bowman contends that he was prejudiced when his counsel failed to present forensic test results that confirmed that no red-dye was detected on the black T-shirt recovered from Bowman when he was arrested. However, there is no evidence that this t-shirt was worn by Bowman on the day of the robbery or that he was in the getaway van. Additionally, four days elapsed between the robbery and Bowman's arrest. We hold that evidence of the lack of red dye on a particular black t-shirt recovered from Bowman when he was arrested did not prejudice him under the Strickland standard.

Finally, Bowman maintains that it was prejudicial to him when his own counsel presented expert testimony that corroborated the conclusion of the Commonwealth's fingerprint expert witness that the three fingerprints lifted from the

14

glass partitions on the counter at the bank belonged to Bowman. Additionally, while Bowman recognizes that Williams questioned the Commonwealth's expert concerning the fact that two different fingerprint cards contained lifts of the same fingerprint, Bowman faults his counsel for not questioning the Commonwealth's expert regarding the fact that "one of the three fingerprints was not identified as that of Bowman until a second examination."

In the Commonwealth's case in chief, Anderson testified from a diagram that demonstrated that Bowman's print was pointing one way as he vaulted the counter and pointed the opposite way as he vaulted back over to exit the bank. Bowman's expert, while confirming that the prints were Bowman's, testified that looking at the fingerprint card did not prove which direction the robber was facing. He also contradicted the Commonwealth's expert by testifying that cleaning a bank counter daily does not guarantee that all of the latent prints were removed and that a fingerprint could survive as long as 15 years on a surface. Bowman's expert offered the possibility of a different explanation for Bowman's prints on the surface of the teller counter. We hold that introduction of evidence by Bowman's expert that confirmed the existence of his prints but provided the opportunity for

explanation did not prejudice him under the Strickland standard.

## III.  Conclusion

For the reasons stated, we find no error in the habeas court's denial of Bowman's petition.  Accordingly, we will affirm the judgment of the habeas court.

Affirmed.