Present: All the Justices

SHANTEL D. PENDER

v.  Record No. 981269     OPINION BY JUSTICE ELIZABETH B. LACY
                                         April 16, 1999

RONALD J. ANGELONE, DIRECTOR,
VIRGINIA DEPARTMENT OF CORRECTIONS

FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
Robert G. O'Hara, Jr., Judge

On June 28, 1993, Shantel D. Pender was tried without a jury in the Circuit Court of the City of Petersburg and convicted of first degree murder. After affirmance of the conviction on direct appeal, Pender filed a petition for a writ of habeas corpus with this Court pursuant to Code § 8.01-654, claiming that he was denied his rights under the Sixth Amendment to the United States Constitution because his trial counsel was ineffective. By order entered November 7, 1996, a writ of habeas corpus was issued pursuant to Code § 8.01-657 directing the Circuit Court of the City of Petersburg to determine the issue of ineffective assistance of counsel. Following an evidentiary hearing, the circuit court concluded that Pender was not denied effective assistance of counsel and dismissed Pender's petition for writ of habeas corpus. Pender appeals the order of dismissal.

In considering Pender's appeal, we apply well-established principles. The Sixth Amendment to the United States Constitution guarantees a defendant in a criminal trial the

right to effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  To prevail in a claim of ineffective assistance of counsel, a petitioner bears the burden of showing not only that his counsel's performance was deficient but also that he was actually prejudiced as a result.  Murray v. Griffith, 243 Va. 384, 388, 416 S.E.2d 219, 221 (1992).  In order to establish prejudice, the evidence must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  The prejudice analysis includes a focus on "whether the result of the proceeding was fundamentally unfair or unreliable."  Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

The circuit court dismissed Pender's petition for a writ of habeas corpus because it found that "[u]pon the entire record, the errors of counsel were not of the type, nature or character that would render the result of the petitioner's criminal trial unreliable or unfair."  Accordingly, in this appeal, we need not consider whether the alleged errors of Pender's criminal trial counsel rendered counsel's performance deficient, but, we direct our review to whether the evidence presented at the habeas trial demonstrated prejudice as required under Strickland.  See Williams v. Warden of the

2

Mecklenberg Correctional Center, 254 Va. 16, 23, 487 S.E.2d 194, 198 (1997).

Pender contends that the evidence adduced at the habeas proceeding, if produced at his criminal trial, "would have prevented the Commonwealth from meeting its burden to establish the elements of first degree murder in this case." Thus, according to Pender, his criminal trial counsel's failure to present this evidence was prejudicial under the standard in Strickland because it rendered the criminal trial unreliable and unfair in violation of his Sixth Amendment rights. We disagree.

To sustain the charge of first degree murder in the criminal trial, the Commonwealth had to show that Pender committed a "willful, deliberate, and premeditated killing." Code § 18.2-32. The element that distinguishes first degree murder from second degree murder is that of premeditation, a specific intent to kill. Rhodes v. Commonwealth, 238 Va. 480, 486, 384 S.E.2d 95, 98 (1989). The specific intent to kill "'may be formed only a moment before the fatal act is committed provided the accused had time to think and did intend to kill.'" Id. at 485, 384 S.E.2d at 98 (citations omitted). If a defendant only intended serious bodily harm to the decedent, the offense is murder in the second degree. Id. at 486, 384 S.E.2d at 98.

To understand the significance of the evidence produced in the habeas proceeding, we must first review the evidence in the criminal proceeding. In that proceeding the Commonwealth produced two witnesses: Rodney Turner, a friend of Pender's who was with him at the time of the murder; and Detective Patrick Kelleher, the officer who investigated the murder and interviewed Pender. The defense did not call any witnesses.

Turner testified that he and two other men, John E. Taylor and Tony Brown, were standing in front of a residence when Pender approached them and stated that the deceased, who "had taken the package of drugs," was "at the store." Pender told the three men "to come on and let's go get him." According to Turner, the four men chased the deceased down the street, through an alley, and onto the porch of a house. The deceased then jumped off the porch and went through the bushes to another house, where he "was knocking on the door trying to get in." When he could not get inside, the deceased ran to a third house. The four men continued the chase to the third house, but only Pender and Taylor followed the deceased onto the porch. Turner testified that he heard Pender and the deceased "saying words," and that when Taylor and Pender came off the porch, Pender told Turner that he had stabbed the deceased. Turner also testified that he did not see any weapons on the deceased and that he could not see what

4

happened on the porch of the third house because he was too far away.  No weapons were found on the deceased.

Although Pender did not testify at his trial, his written confession was introduced by the Commonwealth.  In his confession Pender stated that the deceased

> stole drugs from 2 of my friends one week.  So he tried to wait till every thing goes down and comes back.  Well he came back and stole my 100 dollar bill so I started chasing him and my other friends chased him to [sic].  Well we caught up with him & my friend started hitting him.  Then, he ran some more & he had some on him because he reached to his side & thats [sic] when I cut him.  I was not trying to kill him.  I just wanted to protect myself.  He could of [sic] had a gun & just wanted us to case [sic] him away from the crowd.  I didn't try to kill him.  I didn't know he was dead because he didn't seem to be hurt.  And I was not tryin [sic] to skip town because it would have made matters worst [sic].  All I wanted was my money.  Not to kill anyone or be classified as a murderer.  I just though [sic] I had cut him.  But I am sorry and scared.

At the close of the evidence, Pender moved to strike the first degree murder charge based on the uncontradicted statement in his confession that he was not trying to kill the deceased but only stabbed him because he thought the deceased was armed.  The trial court rejected the defense's motion and found Pender guilty of the charge, stating that there was "no evidence" that the deceased resisted or had a weapon "with the exception of the statement that defendant made to the police after a time of reflection that he made a move to his side."

At the sentencing hearing, the defense again moved to have the charge reduced to second degree murder or voluntary manslaughter based on Pender's "unrebutted" statement that "he struck at his hand believing that [the deceased] was going to produce a weapon that would endanger Pender's life or limb, and that he did not intend to do any more damage than to a strike of the hand, he did not intend the mortal wound at all."

The trial court rejected Pender's claim that he intended only to cut the deceased's hand concluding that it was impossible for Pender to pull out a knife and prepare to "strike the blow" to the deceased's hand "in that second" that the deceased allegedly made a sudden move for his waistband. According to the trial court, if the deceased

> made a quick move there is no way that [Pender] could have stabbed at his hand unless [Pender] already had a knife in [his] hand ready to use it. That's why the Court infers intent to kill. That [Pender] planned this from the very start or somewhere during the chase.

The evidence presented at the habeas hearing, which Pender asserts makes the result of the criminal trial unreliable, includes a statement given to the police by Taylor and the testimony of Crystal Brown, Tony Brown, and Mario Hawkins. The substance of the testimony by Crystal Brown and Tony Brown refuted that portion of Turner's testimony at the

criminal trial that Pender sought to enlist Taylor, Turner, and Brown in a chase of the defendant because drugs were taken. In Taylor's statement to the police, he stated that he saw the deceased reach in his coat just before Pender stabbed him. Hawkins, whose name was given to defense counsel by Pender as a possible witness, testified that the deceased had sold a gun earlier in the evening and that, while "words were exchanged" just prior to the chase, the deceased "stepped back and he put his hand behind his back" like he was going to get a gun.

This testimony, Pender asserts, provided the evidence the trial court found missing in the criminal trial to support Pender's belief that the deceased was armed and may have been reaching for a weapon when Pender stabbed him. In this regard, Pender also bases claims of prejudice on trial counsel's failure to introduce the videotape of his confession in which he says that he only intended to cut the hand of the deceased and on trial counsel's failure to adequately advise Pender of his right to testify at the criminal trial. Pender claims that he would have testified that he only intended to do bodily injury in stabbing the deceased and that his testimony would have refuted Turner's testimony that he urged others to chase and harm the deceased.

7

None of this evidence, however, has any bearing on the facts upon which the trial court based its finding that Pender intended to kill the deceased. As recited above, the trial court concluded that Pender could not have pulled out the knife and stabbed the deceased "in that second" the deceased made a movement for his waistband. Thus, the trial court concluded that Pender had engaged in a prolonged chase of the deceased with his knife drawn and had formed the intention to kill the deceased at an earlier point in time.[*] Whether the purpose of the chase was to recover drugs or to recover money taken from Pender and whether Pender thought the deceased was armed or not, are irrelevant distinctions that do not render unreliable the court's factual conclusions in the criminal trial that Pender had his knife drawn during the chase and intended to use it to kill the deceased.

Further, Pender's claim that his counsel did not adequately advise him of his right to testify at the criminal trial is not borne out by the record. At the criminal trial, there was an exchange between the trial court and Pender in

_____

[*] Pender apparently does not contest the trial court's conclusion that he had the knife drawn prior to his final confrontation with the deceased. At the habeas proceeding, Pender testified that the knife was in his hand because it had fallen out of his boot during the chase. This testimony does not support a theory that the knife was drawn or held because Pender believed the deceased was armed, and Pender does not

8

which he stated that he had been fully advised of his right to testify and chose not to do so.

Finally, Pender cites other alleged shortcomings that he claims affected the outcome of his trial, including trial counsel's failure to present evidence of the deceased's delay in seeking medical help after the stabbing, as well as trial counsel's failure to adequately investigate witnesses who may have seen the deceased take the $100 bill from Pender just prior to the chase.  Again, such evidence does not relate to or contradict the facts that formed the basis of the trial court's finding of an intent to kill.

In summary, none of the evidence or other claims asserted in the habeas proceeding relate to the facts that formed the basis of the trial court's conclusion that Pender formed an intent to kill during the chase.  Pender admitted to the persons present at the stabbing and to the investigating officer that he stabbed the deceased, and he confessed that he chased the deceased because the deceased had taken drugs and money from him and two associates.  The trial court was entitled to base its conclusion on this evidence. "Premeditation and formation of an intent to kill seldom can be proved by direct evidence.  A combination of circumstantial

_____

claim he should have been allowed to give this testimony at the criminal trial.

factors may be sufficient."  Rhodes, 238 Va. at 486, 384 S.E.2d at 98, citing Epperly v. Commonwealth, 224 Va. 214, 232, 294 S.E.2d 882, 892-93 (1982).

The habeas court found that these facts entitled the trial court in the criminal case to find Pender guilty of first degree murder and that the evidence at the habeas proceeding did not support a finding that any errors of counsel in the criminal trial presented issues or facts that "would render the result of the petitioner's criminal trial unreliable or unfair."  Based on our review of the record, we concur and will affirm the judgment of the circuit court denying the relief sought by Pender and dismissing the petition for a writ of habeas corpus.

Affirmed.