## CIRCUIT COURT OF FAIRFAX COUNTY

Commonwealth of Virginia

v.

Randy W. Wike

October 13, 2000

Case No. (Criminal) 097716

BY JUDGE ARTHUR B. VIEREGG

On September 22, 2000, evidence was taken and argument presented in connection with the Defendant Wike's motion to withdraw his guilty plea. I took the motion under advisement. I am now prepared to rule.

*Overview*

At the plea hearing on July 31, 2000, Mr. Wike entered a guilty plea and executed a plea form. After asking Mr. Wike a series of questions, the standard plea colloquy, I determined that Mr. Wike's plea was freely, intelligently, and voluntarily made. I then asked the Commonwealth's Attorney, Mr. Plowman, to summarize the evidence against the Defendant. Assistant Commonwealth's Attorney Plowman stated as follows:

On January 15 of this year at approximately 2:00 a.m., Major Williams of the Fairfax County Police Department was traveling westbound on Route 66 in Fairfax County . . . in an unmarked cruiser. The Defendant was driving a 1983 Jaguar and passed the Major . . . traveling at a speed of approximately 100 miles per hour. Major Williams did conduct a pace of the vehicle at 100 miles per hour for approximately half a mile. The posted speed limit at that location is, of course, 55 miles per hour. After the pace was concluded, the Defendant did slow his vehicle to approximately 70 in order to

negotiate the ramp off of Route 66 to Route 50 westbound. After doing that, Major Williams, still in pursuit, activated his emergency equipment and the Defendant did pull to a stop. Once Major Williams was approaching the Defendant's vehicle, which was stopped on the side of the road, the Defendant put his car back in gear and proceeded to accelerate away. Major Williams did follow in pursuit and the Defendant proceeded to take the ramp to Fair Oaks Mall. While in pursuit, the Defendant reached speeds of 70 to 80 miles per hour through the parking area. . . . The Defendant was finally located where he had stopped at a loading dock and was detained by mall security there when Major Williams arrived. Once he did approach, he did notice a strong odor of alcohol about the Defendant. He had bloodshot eyes. Major Williams did note that he was very unsteady on his feet when he was unsupported by the security guards or by himself. When the Major asked about the status of his license, the Defendant did indicate that he was an habitual offender, having been determined for prior convictions for driving while intoxicated. . . . He was arrested for these offenses and . . . the lab results of the two blood tests – one for the Commonwealth and one for the Defendant – revealed blood alcohol levels of .12 and .14.

Then, I asked Mr. Wike's attorney, Mr. Lorenzo Bean, a well-respected criminal defense attorney, whether those were the facts of the case as he understood them based on his representation of Mr. Wike. Although Mr. Bean made several clarifying remarks, he agreed that the facts were substantially accurate. I then asked Mr. Wike whether Mr. Plowman's statement of the facts was accurate. Mr. Wike agreed that the facts, as stated, were correct. Based on his plea and the agreed facts, I found Mr. Wike guilty of Driving While Intoxicated, a Third Offense in Ten Years; Driving After Having Been Declared an Habitual Offender, a Second or Subsequent Offense; and Speeding to Elude. Whereupon, I ordered a presentencing investigation. The case was continued to September 22, 2000. Mr. Wike, thereafter, dismissed his counsel, Mr. Bean. An Order was entered on September 22, 2000, substituting Mr. Shea for Mr. Bean. On September 12, 2000, Mr. Shea filed a motion on behalf of Wike to permit Mr. Wike to withdraw his guilty plea. At the September 22 hearing, Mr. Shea called two witnesses in support of Mr. Wike's motion, Mr. Bean and Mr. Wike himself. After hearing argument, I took the motion under advisement. Sentencing was continued until October 27, 2000.

At the September 22 hearing, Mr. Bean testified generally to his understanding of the facts of the case. They tracked those summarized by Assistant Commonwealth's Attorney Plowman at the plea hearing. Mr. Bean stated that he had obtained his understanding of the facts of the case and Mr. Wike's arrest record from conversations with Mr. Wike before the preliminary hearing and conversations with the Assistant Commonwealth's Attorney at Mr. Wike's preliminary hearing. He confirmed, however, that although he discussed Mr. Wike's arrest record with him, he did not obtain a physical copy of the arrest record and hence did not actually display the arrest record to Mr. Wike prior to the plea hearing. Mr. Bean also indicated that Mr. Wike was very concerned about the seriousness of the charges against him; that the Commonwealth's Attorney at the preliminary hearing had indicated the Commonwealth would not waive a jury in the case; that he had met with Mr. Wike on nine occasions in all; and that on the date of trial, Mr. Wike decided to plead guilty rather than go to trial.

At the September 22 hearing, while Mr. Bean was on the stand, Mr. Shea reviewed Mr. Bean's files relating to his representation of Mr. Wike. Those files were not thereafter used to contradict Mr. Bean's testimony, nor were they entered into evidence. Mr. Wike also testified at that hearing. He testified he had met with Mr. Bean on only two occasions before the preliminary hearing; that he had met with Mr. Bean at the preliminary hearing; but that he did not otherwise confer with Mr. Bean until the plea hearing on July 31, 2000. Mr. Wike presented no testimony indicating either (1) that Mr. Wike's arrest record did not support his convictions or (2) that the facts summarized by Mr. Plowman at the plea hearing were inaccurate.

Based on the evidence presented, Mr. Shea argued that Mr. Wike's motion to withdraw his plea should be granted because Mr. Bean had ineffectively represented Mr. Wike prior to the plea hearing. He particularly stressed the fact that Mr. Bean had not obtained a copy of Mr. Wike's arrest record. However, Mr. Shea neither introduced that record, nor did he argue that Mr. Wike's record would in any way have exculpated Mr. Wike from the charges to which he had pleaded guilty. Mr. Shea did suggest that there might be an issue of whether or not the arresting officer's identification of Mr. Wike could be proven. However, as indicated above, no evidence supporting that supposition was presented. By way of final argument, Mr. Shea otherwise relied upon the brief filed supporting Mr. Wike's motion to withdraw his guilty plea. In that brief, he indicated that Mr. Bean's representation was ineffective because the Commonwealth would not have been able to demonstrate that, as a habitual offender, Mr. Wike had driven on the highways of Virginia. No evidence supporting that suggestion, however, was presented at the September 22 hearing.

*Decision*

In *Parris v. Commonwealth*, 189 Va. 321, 52 S.E.2d 872 (1949), the Supreme Court of Virginia held that a motion by a defendant to withdraw his guilty plea is one to be decided by the trial court exercising sound discretion based on the facts and circumstances of the case. 189 Va. at 324. The Supreme Court emphasized that such a motion "should not be denied, if timely made, and if it appears from the surrounding circumstances that the plea of guilty was submitted in good faith *under an honest mistake of material fact or facts, or if it was induced by fraud, coercion, or undue influence and would not otherwise have been made." Id.;*[1] see also *Hoverter v. Commonwealth*, 23 Va. App. 454, 477 S.E.2d 771 (1996).

Here, Mr. Wike has not grounded his motion to withdraw his guilty plea upon either mistake of fact or fraud, coercion, or undue influence. Instead, he contends such relief is apposite because Mr. Bean ineffectively represented him.

Assuming, *arguendo*, that ineffective counsel may be a predicate for a motion to withdraw a guilty plea, see *Hall v. Virginia*, 30 Va. App. 74, 82, 515 S.E.2d 343 (1999), ineffective representation has most often been addressed by courts in the context of post-conviction *habeas corpus* petitions. *See Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984); *Moore v. Hinkle*, 259 Va. 479, 527 S.E.2d 419 (2000); *Pender v. Angelone*, 257 Va. 501, 514 S.E.2d 756 (1999); *Curo v. Becker*, 254 Va. 486, 493 S.E.2d 368 (1997); *Williams v. Warden of Mecklenburg Corr. Ctr.*, 254 Va. 16, 487 S.E.2d 194 (1997); *Strickler v. Murray*, 249 Va. 120, 452 S.E.2d 648 (1995). In those cases, in order to obtain a new trial, a defendant must satisfy two requirements: (1) the defendant's representation at trial was ineffective; and (2) prejudice eventuated from that ineffective representation. *Strickland*, 466 U.S. at 687. Although it is arguable that the prejudice which must be shown to support the withdrawal of a guilty plea before sentencing should be less than that necessary to obtain post-conviction *habeas corpus* relief, reason dictates that a defendant seeking to withdraw a guilty plea must show some prejudice. In other words, while *Strickland* is not controlling, it is instructive. After reviewing the facts before me with reference to *Strickland*, I conclude, for the reasons that follow, that neither of the *Strickland* prongs has been satisfied by Mr. Wike.

Here, the evidence with regard to the first prong of the *Strickland* decision is partially in dispute. On one hand, Mr. Wike testified he had only met with

---

[1] Except to correct manifest injustice, the motion must be made before a sentence is imposed. Va. Code § 19.2-296. Therefore, Mr. Wike's motion was timely.

Mr. Bean on four occasions. Mr. Bean testified he met with him on nine occasions. If it is assumed that Mr. Bean and Mr. Wike discussed the case at length at the two meetings before the preliminary hearing, a fact not in dispute, and that Mr. Bean further discussed Mr. Wike's arrest record with him (after reviewing the Commonwealth's copy) at the preliminary hearing, in the absence of further testimony, Mr. Wike has failed to demonstrate that Mr. Bean's preparation was ineffective or unreasonable. No further evidence to that effect was elicited, nor was case law presented, for instance, that counsel could not rely on an arrest record shown to him by the Commonwealth's Attorney and discussed with the defendant. The arguments related to Mr. Bean's putative failure to address the identification issue or to pursue the driving on the highway requirement of Va. Code § 46.2-357 simply are factually unsupported. Indeed, the factual summary at the plea hearing demonstrates the Commonwealth's preparedness to demonstrate those facts and that Mr. Wike agreed to those facts. At the September 22 hearing, Mr. Wike might have introduced evidence that he did furnish or could have furnished exculpatory information to Mr. Bean supporting possible defenses. Though afforded the opportunity to do so, he did not. He similarly might have questioned Mr. Bean about whether these issues were considered. He did not. He might have presented evidence with respect to criminal defense attorney practice. He therefore did not sustain his burden under *Strickland* for relief based on ineffective representation. Accordingly, Mr. Wike did not sustain his burden to demonstrate that Mr. Bean's representation of him was unreasonable.

The second prong of *Strickland* requires that the alleged neglect of defense counsel resulted in prejudice to the defendant. As indicated above, at the September 22 hearing, Mr. Wike adduced no facts demonstrating that Mr. Wike might have avoided a conviction for the three crimes to which he pleaded guilty. Not a scintilla of evidence presented suggests prejudice was suffered by Mr. Wike. Mr. Wike likewise did not meet his burden of proving any prejudice, whether gauged by *Strickland* or some lesser standard.

At the September 22 hearing, Mr. Wike also did not testify or otherwise demonstrate that he was laboring under a mistake of fact when he entered his guilty plea. Nor did he testify or otherwise demonstrate that he was the victim of fraud, coercion, or undue influence. Mr. Wike therefore has not demonstrated he is entitled to withdraw his guilty plea either pursuant to *Parris* standards viewed alone or after reference to the *Strickland* decision.

When all of the foregoing facts and circumstances are considered, I conclude that Mr. Wike's motion to withdraw his guilty plea must be denied.