COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Willis and Bumgardner
Argued at Richmond, Virginia


IAN CABILI PERTOS

MEMORANDUM OPINION[*] BY
v.        Record No. 1664-97-2        JUDGE JERE M. H. WILLIS, JR.
SEPTEMBER 22, 1998
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
James E. Kulp, Judge

Craig S. Cooley for appellant.

Eugene Murphy, Assistant Attorney General
(Mark L. Earley, Attorney General, on brief),
for appellee.


On appeal from his conviction for first degree murder,[1]

Ian C. Pertos contends that the trial court erred:  (1) in

failing to instruct the jury properly on the term "deadly

weapon"; (2) in refusing to instruct the jury on voluntary

manslaughter; and (3) in refusing to strike the evidence as to

first degree murder.  We affirm the judgment of the trial court.

I.

BACKGROUND

Pertos was romantically involved with the victim, Kila

Blount, and had lived with her for nearly a year.  In the month

preceding her death, Blount began arriving home late from work

---

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

[1]Pertos does not appeal his convictions for grand larceny,
credit card theft and credit card fraud.

and showering upon her return.  Pertos was convinced that she was seeing another man.  During the week prior to Blount's death, a neighbor heard loud arguing between Pertos and Blount, and heard Pertos threaten Blount.

On August 9, 1996, Pertos used a cord from a pair of undershorts to strangle Blount to death.  The medical examiner testified that it took minutes for the strangulation to kill Blount.  When Blount began to bleed from her nose, Pertos placed her body on a bed.  He then left the apartment to purchase garbage bags of a type different from those he usually kept at his apartment.  He wrapped Blount's body and the bloody bed linens in the new plastic garbage bags and buried them in the woods behind the apartment building.  Within two hours following Blount's death, Pertos used her ATM card, attempting to obtain money from her account.

The morning after he killed Blount, Pertos pawned her jewelry.  He falsely told Blount's mother and a police officer investigating a missing person report that he did not know where Blount had gone.  Pertos stayed at a friend's home for three days.  On the third evening, he told his friend that he was going to play pool and never returned.  Instead, he took a taxi to Fredericksburg and went by bus to New York.

On August 30, 1996, Pertos was arrested in Hempstead, New York by Detective Karlya, who was unaware of the killing in Virginia.  Prior to his commitment to jail, Pertos underwent a

strip search.  When he was informed that he could not bring the drawstring from his undershorts into the jail, Pertos said, "Oh s---, I made a mistake."  He then told Karlya that he had killed his girlfriend.

Thereafter, Pertos gave Karlya a statement in which he stated that Blount had "played him."  He told Karlya he could smell the "rubber" of a new boyfriend on Blount's body.  He told Karlya that on the night of the murder Blount had received pages on her beeper.  He said he thought Blount's new boyfriend, believed by him to be Wandell Taylor, was attempting to call her.  He told Karlya he strangled Blount from behind, and pulled the cord tighter when she received a page while he was choking her.  He opined that he had buried Blount too close to the apartment building.

After his extradition from New York, Pertos told Henrico Investigator Brooks that he had been having disagreements with Blount.  Pertos stated that on the night in question, despite her telling him she was going out with some female friends, he believed she was going to meet her new boyfriend.  Pertos said that she had "played [him] for a fool" and that he was hurt.  He told Brooks, "I was just mad."

At trial, Pertos admitted knowing that Blount planned to move to her mother's home and that he had discussed breaking the lease with the apartment management.  He admitted killing Blount, but said he only intended to scare her.  He explained that he had

started to release the cord from around Blount's neck when her pager sounded. He said he saw on the pager a number that he believed to be Taylor's. Whereupon, he tightened his grip on the cord and killed Blount.

## II.

### "DEADLY WEAPON" INSTRUCTION

The trial court instructed the jury as follows:
> [Y]ou may infer malice from the deliberate use of a deadly weapon, unless from all the evidence you have a reasonable doubt as to whether malice existed. A deadly weapon is any object or instrument that is likely to cause death or great bodily injury because of the manner and under the circumstances in which it is used.

Pertos contends that the trial court erred in failing to instruct the jury that it should determine whether the cord was a deadly weapon. He argues that without that explicit instruction, the instruction misled the jury to conclude presumptively that the ligature was a deadly weapon.

Pertos relies upon Pannill v. Commonwealth, 185 Va. 244, 38 S.E.2d 457 (1946). In Pannill, the trial court instructed the jury as follows:
> "[A] man is presumed to intend that which he does or which is the immediate or necessary consequence of his act, and if the prisoner, with a deadly weapon in his possession, without any, or upon very slight provocation, gave to the deceased a mortal wound, he, the prisoner, is prima facie guilty of wilful, deliberate, and premeditated killing, and the necessity rests upon him of showing the extenuating circumstances, and unless he proves such extenuating circumstances, or the circumstances appear from the case made by

- 4 -

> the State, he is guilty of murder in the
> first degree."

Id. at 253, 38 S.E.2d at 462.  The Supreme Court reversed the conviction, holding that the phrase "with a deadly weapon in his possession" misled the jury.  The Court ruled that the stick used in the killing was not per se a deadly weapon.  It concluded that:  "Generally, unless a weapon is per se a deadly one, the jury should determine whether it, and the manner of its use, places it in that category . . . ."  Id. at 254, 38 S.E.2d at 462.

The error in Pannill was the failure of the trial court to provide the jury a definition of "deadly weapon."  Without that definition, the inclusion of the term "deadly weapon" in the instruction suggested that the stick was, as a matter of law, a deadly weapon.  See Bruce v. Commonwealth, 9 Va. App. 298, 300-01, 387 S.E.2d 279, 280 (1990).

Here, the trial court coupled its instruction on inferring malice with a precise definition of "deadly weapon."  See Strickler v. Murray, 249 Va. 120, 129, 452 S.E.2d 648, 652-53, cert. denied, 516 U.S. 850 (1995); Quintana v. Commonwealth, 224 Va. 127, 140, 295 S.E.2d 643, 649 (1982).  See also Virginia Model Jury Instructions, Criminal § 34.240 (1993).  The trial court also instructed the jury that "[they were] the judges of the facts."  While the trial court could have instructed the jurors explicitly that they were to determine whether the ligature was a deadly weapon, see Henry v. Commonwealth, 195 Va.

282, 288-89, 77 S.E.2d 863, 868 (1953), it was not required to do so.  The trial court properly instructed the jury as to its duty and provided it a correct definition of "deadly weapon."

### III.

### SUFFICIENCY OF EVIDENCE

Pertos next contends that the Commonwealth failed to prove the premeditation necessary to sustain his conviction for first degree murder.  We disagree.

> To prove premeditated murder, the Commonwealth must establish:  "(1) a killing; (2) a reasoning process antecedent to the act of killing, resulting in the formation of a specific intent to kill; and (3) the performance of that act with malicious intent."  Premeditation requires the formation of a specific intent to kill.

Archie v. Commonwealth, 14 Va. App. 684, 689, 420 S.E.2d 718, 721 (1992) (quoting Rhodes v. Commonwealth, 238 Va. 480, 486, 384 S.E.2d 95, 98 (1989)).  "A design to kill may be formed only a moment before the fatal act is committed provided the accused had time to think and did intend to kill."  Giarratano v. Commonwealth, 220 Va. 1064, 1074, 266 S.E.2d 94, 100 (1980) (citation omitted).  Whether a defendant acted with such premeditation is a question to be determined by the trier of fact.  Morris v. Commonwealth, 17 Va. App. 575, 578, 439 S.E.2d 867, 869 (1994).

Viewing the evidence in the light most favorable to the Commonwealth, Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987), we find it sufficient to prove beyond a

reasonable doubt that Pertos premeditated, deliberated and maliciously killed Blount.

Although Pertos testified that he intended only to frighten Blount, the jury was entitled to reject this explanation and to conclude that the killing was premeditated. See Cantrell v. Commonwealth, 7 Va. App. 269, 290, 373 S.E.2d 328, 339 (1988). Pertos knew that his relationship with Blount was changing. He admitted that he killed her intentionally. He acknowledged that he had considered ceasing his attack on Blount, but chose to kill her. In the week prior to murdering Blount, he had threatened her.

From the testimony of the witnesses and the circumstantial evidence, the jury could conclude that Pertos knew of Blount's intention to move, planned her murder, and then sought to avoid discovery of his connection to the murder.

IV.

VOLUNTARY MANSLAUGHTER INSTRUCTION

Finally, Pertos contends that the trial court committed reversible error in refusing an instruction on voluntary manslaughter. We disagree.

Pertos was charged with first degree murder. The trial court instructed the jury on the elements of first degree murder and second degree murder. It refused an instruction on voluntary manslaughter. The jury convicted Pertos of first degree murder.

> [W]here the reviewing court is able to
> determine that the trial court's error in
> failing to instruct the jury could not have

- 7 -

> affected the verdict, that error is harmless.
> Such a determination can be made where it is
> evident from the verdict that the jury would
> have necessarily rejected the lesser-included
> offense on which it was not instructed. . . .
> By contrast, where it is impossible to
> determine from the verdict whether the jury
> would have necessarily rejected a
> lesser-included offense on which it was not
> instructed, error in refusing to instruct on
> that offense is not harmless.

Turner v. Commonwealth, 23 Va. App. 270, 276, 476 S.E.2d 504, 507 (1996), aff'd, 255 Va. 1, 492 S.E.2d 447 (1997), cert. denied, 118 S. Ct. 1852 (1998).

Where a jury is instructed on first degree murder and second degree murder, rejects second degree murder, and convicts the defendant of first degree murder, such a verdict "compels the conclusion that [the jury] would never have reached a voluntary manslaughter verdict." Id. at 277, 476 S.E.2d at 508. Thus, if we assume, which we do not, that the trial court erred in refusing to instruct the jury on voluntary manslaughter, such error was harmless.

The judgment of the trial court is affirmed.

Affirmed.