Present: Kinser, C.J., Lemons, Goodwyn, and Millette, JJ., and Russell and Koontz, S.JJ.

MARQUIS DEVON BYRD

OPINION BY
v.  Record No. 101289   SENIOR JUSTICE CHARLES S. RUSSELL
April 21, 2011
GENE M. JOHNSON, DIRECTOR OF THE
VIRGINIA DEPARTMENT OF CORRECTIONS

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Nolan B. Dawkins, Judge

This is an appeal from an order dismissing a petition for habeas corpus.  It presents questions whether the petitioner was prejudiced because (a) his trial counsel failed to renew his motion to strike the evidence at the conclusion of all the evidence, and (b) his counsel at sentencing failed to obtain a ruling on his motion to set aside the verdict.  We decide both questions in the light of the second ("prejudice") prong of Strickland v. Washington, 466 U.S. 668, 687, 697 (1984).

Proceedings

Marquis Devon Byrd (the petitioner) was indicted for the first-degree murder of Al-Rahn Powell, aggravated malicious wounding of Dennis Wise and use of a firearm in both offenses. On November 13-15, 2006, at a jury trial in the Circuit Court of the City of Alexandria he was convicted of the second-degree murder of Powell, the unlawful wounding of Wise and use of a firearm in the murder case.  He was acquitted of the firearm charge in the wounding case.

At the close of the Commonwealth's evidence, defense counsel made a motion to strike, which the court denied. At the close of all the evidence, defense counsel failed to renew the motion to strike. Petitioner's trial counsel was given leave to withdraw from the case and the petitioner retained substitute counsel to represent him with respect to sentencing. Substitute counsel filed a motion to set aside the verdict but did not argue that motion before the court and never obtained a ruling on it. In accordance with the jury's verdict, the court sentenced the petitioner to 33 years' imprisonment for the three offenses of which he had been convicted, with 13 years suspended.

The Court of Appeals, citing McQuinn v. Commonwealth, 20 Va. App. 753, 757, 460 S.E.2d 624, 626 (1995), and McGee v. Commonwealth, 4 Va. App. 317, 321, 357 S.E.2d 738, 739-40 (1987), and pursuant to Rule 5A:18, dismissed petitioner's appeal on the ground that the issue of the sufficiency of the evidence had not been preserved by either a renewal of the motion to strike at the conclusion of all the evidence or by a motion to set aside the verdict. Byrd v. Commonwealth, Record No. 1766-07-4, slip op. at 1 (December 28, 2007). The petitioner did not request a review by a panel but filed a petition for appeal in this Court, which was denied by an order entered on May 7, 2008.

On May 6, 2009, petitioner filed this petition for a writ of habeas corpus in the circuit court, alleging that he had been denied his right to effective assistance of counsel at both trial and sentencing. The Attorney General filed a motion to dismiss the petition. The court determined that recorded matters furnished a sufficient basis to decide the issues without an evidentiary hearing. By letter opinion entered on February 18, 2010, the court held that petitioner had met the requirements of the first ("performance") prong of Strickland by showing that the performance of both attorneys was defective, resulting in the denial of his direct appeal. The court then turned to consideration of the second ("prejudice") prong of Strickland and concluded that the petitioner had not shown that he suffered prejudice by reason of counsels' defective performance because the record demonstrated that, within a reasonable degree of probability, the outcome of the case would not have been different in the absence of the defective performance by counsel. We awarded petitioner an appeal, limited to the circuit court's application of the second prong of Strickland.

## The Criminal Trial

The question whether, within a reasonable degree of probability, the outcome of the case would have been different in the absence of counsels' defective performance can only be

3

answered, in the procedural posture of this case, by determining whether the petitioner would have had a reasonable prospect of success on appeal if the appellate courts had been able to reach and consider his contention that the evidence was insufficient to support the verdict, that being the sole question presented on direct appeal.[1] To answer that question we must consider the record in the underlying criminal trial. The evidence was in sharp conflict. In accordance with familiar principles, we will state its pertinent parts in the light most favorable to the Commonwealth, the prevailing party at trial. See, e.g., Preston v. Commonwealth, 281 Va. 52, 57, 704 S.E.2d 127, 129 (2011).

The petitioner was 17 years old at the time of trial. He had a history of suspensions from school for fighting. He testified that he had been bullied and had begun to carry firearms for self-protection, although he knew it was unlawful to do so. He testified that on one prior occasion, when two individuals approached him intending to assault him, he

---

[1] In this appeal, the petitioner presents only the question whether he was prejudiced by counsels' defective performance in failing to preserve the issue of the sufficiency of the evidence for his direct appeal. We therefore confine our consideration to that issue. Cf. Elliott v. Warden, 274 Va. 598, 614, 652 S.E.2d 465, 480 (2007) (both the "performance" and "prejudice" prongs of Strickland were in issue and the petitioner contended that counsel's errors were prejudicial at trial as well as on appeal).

4

brandished a Glock pistol, and fired it into the air. He served 21 days in juvenile detention for that offense.

About two years before the present offense, the petitioner had an altercation with Dennis Wise, one of the victims in the present case. Without any explanation, the petitioner pointed a BB gun at Wise, who then punched him. Because of the petitioner's fights at school, his mother moved the family out of Alexandria to Fairfax County. Nevertheless, the petitioner admitted that he continued to return to Alexandria, making repeated visits to the Cora Kelly Recreation Center.

On July 29, 2006, Mrs. Byrd drove her sons Marquis, the petitioner, and his 14-year-old brother, Malik Byrd (Malik), to Alexandria. She dropped them off at a Metro station where they could catch a bus to take them to the recreation center where, they told her, they intended to play basketball. The petitioner was carrying in his waistband, concealed from his mother, two loaded firearms, a .45 caliber auto-loading pistol and a .32 caliber revolver that the petitioner had just obtained that morning. At the Metro station, the petitioner surreptitiously handed the .32 caliber revolver to Malik and told him "I'll get it back later when we get to where we [are] going." The petitioner testified that he carried his guns that day "because anything could happen."

As the brothers walked along Mount Vernon Avenue, Dennis Wise, then 18 years of age, and 19-year-old Al-Rahn Powell, were riding their bicycles, traveling the same street in the same direction. Neither of the Byrds knew Powell but the petitioner knew Wise from their previous encounter, although they had had no contact for two years. As the bicyclists approached the Byrds, the petitioner silently raised his shirt to display the handle of his pistol. Wise didn't think it was a real gun. Both bicyclists were unarmed. The petitioner "jogged" across the street and entered a barbershop. Mailk followed him but remained in the doorway of the shop. Wise followed slowly and dismounted. The petitioner reappeared at the door of the shop, pointing his pistol straight ahead. Without speaking, the petitioner fired one shot. Wise seized the petitioner from behind, pinning his arms to keep him from firing any more shots. The two fell to the street, struggling for possession of the gun. During the struggle, the petitioner shot Wise in both legs, severely injuring him. While this was taking place, Malik shot Powell in the side of the head with the .32 caliber revolver. Surgeons later removed a .32 caliber projectile from Powell's brain, but he died of his wound 11 days later. The parties stipulate that Malik fired the fatal shot.

After the shootings, the brothers fled the scene together, running through an alley. Malik threw the .32 caliber revolver into a trash can but he was seen by a witness who led the police to it. Several witnesses observed these events and testified. One of them was a customer in a dry-cleaning establishment adjacent to the barbershop. He saw two young men "tussling" on the street and heard shots. He looked out and saw two individuals holding two guns, both "pointed in the same general direction, going up the street." He described the guns, one as a revolver, the other as a "squarish, more modern type weapon." After the shootings, the witness went outside and saw the two victims lying in the street but the shooters had fled the scene. Another witness, however, knew both Byrd brothers and identified them.

## Analysis

As noted above, the jury convicted the petitioner of second-degree murder as to Powell, not the first-degree murder with which he had been charged. The jury convicted the petitioner of the use of a firearm in Powell's murder, but acquitted him of the firearm count with respect to the wounding of Wise. The jury convicted him of the unlawful wounding, not the malicious wounding of Wise. Those verdicts are consistent with conclusions by a unanimous jury that (1) Powell's killing was malicious but had not been premeditated,

and (2) that the petitioner and Malik had acted in concert with regard to Powell's murder or that the petitioner had participated in some way in bringing it about.[2]

The jury was entitled to conclude from the evidence that the petitioner and his brother were returning to the area of the petitioner's earlier fights "looking for trouble;" that the petitioner and his brother acted in concert with a shared intent; that the petitioner armed his younger brother to further their purpose; that the petitioner recognized Wise as an enemy and that the two brothers shared an intent to harm or at least intimidate him; and that the petitioner, while not necessarily intending to kill Powell, nevertheless participated in bringing the murder about by arming his brother with a deadly weapon, initiating the fight and firing the first shot. Those conclusions would comport with the following instructions given to the jury:

> In order to find Marquis Byrd guilty of second degree murder, the Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime. One, that Al-Rahn Powell was killed; and two that the killing was malicious; and three that Marquis Byrd was a principal in the second degree to the killing. If you find from the evidence the Commonwealth has proved beyond a reasonable doubt each of the above elements of the

---

[2] The petitioner does not contend that counsel were ineffective in representing him on the wounding and firearms charges. Our consideration is therefore confined to the murder charge.

8

offense as charged, then you shall find Marquis Byrd guilty of second degree murder . . . .

A principal in the first degree is a person who actually commits the crime. A principal in the second degree is a person who is present and assists by helping in the commission of the crime. It must be shown that he intended by his word, gestures, signals, or action to encourage, advise, urge, or help the person who actually committed the crime, or he shares a criminal intent of the person who actually committed the crime.

Presen[ce] and consent alone are not sufficient to make a person a principal in the second degree. A principal in the second degree is liable for the same punishment as the person who actually commits the crime.

. . . .

If there is a concert of action with a resulting crime one of its incidental probable consequences, then whether such crime was originally contemplated or not, all who participated in any way in bringing it about are equally answerable and bound by the acts of every other person connected with the consummation of such resulting crime. You may infer that every person intends the natural and probable consequences of his acts.

The second prong of Strickland requires a habeas corpus petitioner to "affirmatively prove prejudice" and to show that counsel's defective performance "actually had an adverse effect on the defense." Strickland, 466 U.S. at 693. The Supreme Court has characterized that requirement as "highly demanding," and we have similarly described it as a "heavy burden." Kimmelman v. Morrison, 477 U.S. 365, 382 (1986); Strickler v. Murray, 249 Va. 120, 128-29, 452 S.E.2d 648, 652

9

(1995).  That burden requires the petitioner to establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.

## Conclusion

The jury was entitled to accept the Commonwealth's evidence and to reject the version of events presented by the defendant at trial.  The version of events presented to the jury by the Commonwealth's evidence, considered in the light of the instructions given by the court, fully supports the verdict.  If counsel had performed without any professional errors and the petitioner's direct appeal had been available for review in the appellate courts free of any procedural bar, there is no reasonable probability that a different result would have been reached.  Accordingly, we will affirm the judgment of the circuit court.

Affirmed.