# Richmond

JAMES THOMAS NOLAN v. C. C. PEYTON, SUPERINTENDENT, ETC.

June 12, 1967.

Record No. 6439.

Present, All the Justices.

*Henry J. Kaltenbach* for plaintiff in error.

*Reno S. Harp, III, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for defendant in error.

I'ANSON, J., delivered the opinion of the court.

On November 26, 1948, James Thomas Nolan was convicted in the Circuit Court of Fauquier County of armed robbery and murder of Belmont Woodbridge, and on December 10, 1948, he was sentenced to twenty years and life imprisonment in the penitentiary for robbery and murder, respectively. The record shows that petitioner entered a plea of guilty to each indictment. The court heard evidence in each case, but the record does not show that confessions were introduced at the trials.

On June 11, 1965, Nolan filed a petition for a writ of habeas corpus, alleging that the aforementioned judgments of conviction were void because (1) the evidence on which the convictions were based was obtained as a result of coerced confessions, and (2) he was not provided effective representation by counsel. After hearing evidence on the petition the trial court denied the writ, and petitioner is here on a writ of error.

Petitioner was taken into custody in Romney, West Virginia, on November 15, 1948. When the West Virginia police learned that he was wanted on a burglary charge in Arlington county, Virginia, they notified the Arlington police department. Petitioner waived extradition and was returned to Arlington county in the early morning hours of November 16, 1948.

Petitioner gave the following testimony at the hearing on his habeas corpus petition: From 2 a.m. until 9:30 a.m. on November 16, he was interrogated by the police concerning the burglary committed in Arlington, to which he admits he voluntarily confessed. He was also questioned concerning the robbery and murder of Woodbridge in Fauquier county. At 9:30 a.m., on the same day, he was taken before the county judge of Arlington for a hearing on the burglary charge. After the hearing he was again interrogated concerning the Woodbridge matter. When he told the officers he did not know anything about Woodbridge, one of the officers struck him with a blackjack and told him he would not leave the room alive unless he told them what they wanted to know. He was beaten, bruised and cut about the face and head, and two of his front teeth were knocked out. He was also denied food, not allowed to go to the toilet, and the police threatened to place a "bombing" charge against him. As a result of this treatment he finally confessed that he had shot and killed Woodbridge, and he offered to show them where the body could be found.

In the afternoon of the day he confessed, he was taken by the Arlington police to Fauquier county where he showed the Fauquier authorities the location of Woodbridge's body. After finding the body, he was turned over to the Fauquier officers and confessed to them and to the Commonwealth's attorney. He testified that he told the Fauquier authorities what the Arlington police had told him to say.

Petitioner said two court-appointed attorneys came to see him shortly after he was incarcerated in the Fauquier county jail. He told them he was pleading guilty because the Arlington police had told

him that it would go easier for him. He did not see the attorneys again until his trials, and they did not speak in court on his behalf. He said the trial judge stated that had he not pleaded guilty, the Commonwealth would never have proved the cases against him.

Aubrey T. Grimsley, Fauquier County jailer at the time petitioner was incarcerated, was called as a witness by the petitioner. He testified that petitioner did not at any time exhibit any symptoms of having been physically mistreated, nor did he make any such complaint to him. He appeared normal when he was brought to the jail from the scene of the crime.

Charles G. Stone, Commonwealth's attorney for Fauquier county since January 1944, said that he prosecuted the cases against petitioner and remembered them very well. He testified that he and others arrived at the scene of the crime at approximately the same time as petitioner, who was in the custody of the Arlington police. Petitioner "was very free in his language and he didn't seem to be wanting to hide anything." He voluntarily showed the officers the location of Woodbridge's body and reenacted the crime. There were no indications that petitioner had been "hurt, or injured, or mistreated. He had no marks, or black eyes, or cuts, or abraisons [sic] that [were] apparent to anybody." He did not complain to anybody that he had been injured or mistreated "in Arlington county or anywhere else earlier that day or the day before or at any other time."

After the petitioner was turned over to the Fauquier authorities, Stone told him that if he did not have an attorney, the court would appoint one for him; that he did not have to make a statement unless he wanted to; and that anything he said must be entirely voluntary on his part. Petitioner replied that he had nothing to hide and would be glad to answer any questions, but would not sign any statement until he had first gotten the advice of an attorney.

The statements made by petitioner were recorded by a court reporter and later reduced to writing. In the statement given to Stone, petitioner said that the Arlington police asked him several times about the robbery and murder of Woodbridge; that the officer "was doing his duty but he was not trying to push any pressure. I told him what the score was, I told him I would take him [to Woodbridge's body] if he wanted me to." He further said, "I have not been pushed in any way by anyone, sir. Nobody has twisted my arm and made me say anything, not to this point anyhow." Petitioner testified on rebuttal that he did not recall making the statements to Stone. He did not, however, deny that he made them.

Owen G. Robertson, a former State police officer, testified that he was present when petitioner, in a matter of fact way, reenacted the crime; that there were no bruises or cuts on his face; and that there was nothing to indicate that he had been mistreated.

Upton H. Richards, one of petitioner's court-appointed attorneys, testified that he believed he and the other court-appointed attorney interviewed the petitioner in jail on two occasions; that they were permitted to examine the Commonwealth's attorney's file on the case; and that when they discussed this information with petitioner, he told them he had confessed to the crimes. Counsel advised petitioner to plead guilty in the light of the evidence against him, and he accepted the advice. After the court heard evidence, Richards and his associate pleaded for leniency. Richards said that the trial judge did not say that the Commonwealth could not have proved its case without guilty pleas. Instead, the judge did say that he would take the guilty pleas into consideration in fixing punishment. Petitioner never mentioned to counsel any mistreatment he had received at the hands of the Arlington police, and petitioner's testimony in this case was the first time counsel had heard any such charge made.

Petitioner first argues that the confession made to the Arlington police was involuntary and coerced, and as a result of the confession the Fauquier police obtained evidence which led to his conviction.

One attacking a judgment of conviction in a habeas corpus proceeding has the burden of proving by a preponderance of evidence the allegations contained in his petition. *Smyth* v. *Morrison*, 200 Va. 728, 732, 107 S. E. 2d 430, 433 (1959); *Hawk* v. *Olson*, 326 U. S. 271, 279, 66 S. Ct. 116, 120, 90 L. ed. 61 (1945); *Bates* v. *Meadows*, 358 F. 2d 674 (6th Cir. 1966) cert. denied 385 U. S. 937, 87 S.Ct. 299, 17 L. ed. 217 (1966).

If the testimony of the petitioner alone be accepted and all other evidence disregarded, it would clearly show that the confession made to the Arlington police was involuntary and coerced. But the testimony of Grimsley, his own witness, and other evidence relative to the treatment received from the Arlington police contradict the petitioner. Hence a factual question on conflicting evidence was presented to the trial judge, and his findings of fact are binding on us unless they are unsupported by credible evidence. *Mathews* v. *Commonwealth*, 207 Va. 915, 921, 153 S. E. 2d 238, 242 (1967).

Although petitioner testified that he was beaten, bruised and cut about the face and head and had two of his front teeth knocked out before he confessed to the Arlington police that he robbed and

murdered Woodbridge, there was abundant evidence that he bore no such marks when he was seen within several hours after the alleged incidents. Moreover, he complained to no one about such injuries.

More importantly, in the afternoon of the same day petitioner alleges that he had been mistreated by the Arlington police, he voluntarily stated to the Commonwealth's attorney of Fauquier county, which statement was recorded and transcribed by a court reporter, that "he was not pressured" by the Arlington police to confess to the robbery and murder. He further said, "Nobody had twisted my arm and made me say anything, not to this point anyhow." He did not deny that he made the statements; he said only that he did not remember making them. Surely his oral statements made and transcribed at the time of his arrest are entitled to greater weight than allegations made seventeen years later in this habeas corpus proceeding.

Thus we are of opinion, from a totality of the evidence, that the trial court correctly held that petitioner did not prove the confession made to the Arlington police was coerced and involuntary.

Having concluded that petitioner has not proved that his confession to the Arlington police was involuntary or coerced, we need not discuss the effect of the alleged involuntary or coerced confession on a subsequent confession of the same crime. See, *Mathews* v. *Commonwealth, supra.*

We also agree with the trial court that from the evidence presented petitioner did not show ineffective representation by counsel.

For the reasons stated, the judgment of the court below is

*Affirmed.*