PRESENT: All the Justices

JOSE CRISTINO VELASQUEZ-LOPEZ

                                                        OPINION BY
v. Record No. 150303                         JUSTICE ELIZABETH A. McCLANAHAN
                                                        November 19, 2015
HAROLD CLARKE


                    FROM THE CIRCUIT COURT OF CULPEPER COUNTY
                                  Susan L. Whitlock, Judge

        Jose Cristino Velasquez-Lopez appeals the circuit court's order dismissing his petition

for writ of habeas corpus. Velasquez-Lopez contends the circuit court erred in ruling that his

counsel was not deficient for failing to file a petition for appeal on his behalf. Holding there was

no such error, we will affirm the decision of the circuit court.

                              I.          BACKGROUND

A.      Criminal Proceedings

Velasquez-Lopez was indicted on 33 counts of taking indecent liberties with a child, in

violation of Code § 18.2-370.1. Catherine Lea was appointed to represent Velasquez-Lopez, a

native of El Salvador who does not speak English. She communicated with him through the aid

of a court-appointed interpreter who was fluent in the Spanish language. Due to Lea's concerns

regarding Velasquez-Lopez's mental competency and difficulty with the English language, the

Commonwealth and Velasquez-Lopez submitted expert opinions to the circuit court regarding

his mental status. After hearing evidence, the circuit court ruled that Velasquez-Lopez "suffers

from no mental deficits" and "no indication of any disability in terms of his ability to process

information." In light of Velasquez-Lopez's difficulty with the English language, however, the

circuit court directed counsel and the interpreter to meet with Velasquez-Lopez for up to ten

additional hours, which they did. Subsequently, Velasquez-Lopez pled guilty to all 33 counts.

                                           1

The circuit court sentenced him to a term of 156 years' imprisonment, with all but 18 years suspended, and entered final judgment on September 21, 2010.

Following the sentencing hearing, Velasquez-Lopez sent a hand-written letter to the circuit court stating he felt his "lawyer did not do her job," listing various complaints regarding counsel's performance, and asking for a reduction in his sentence. The circuit court treated the correspondence as a motion to reduce the sentence and denied the motion by order dated September 30. By letter to the circuit court dated October 4, Velasquez-Lopez asked that his case be "re-opened" stating that "the lawyer [his] brothers got can work on the case." He told the circuit court that he "was not comfortable with [his] lawyer," believed "the lawyer [his] brothers got can help [him] better," and that "[his] brothers tell [him] that the lawyer they got can help me only if the case is re-opened."[1]

Lea filed a notice of appeal on behalf of Velasquez-Lopez on October 7, 2010. The Court of Appeals dismissed his case on January 28, 2011, for failure to file a petition for appeal.

B.    Habeas Proceedings

Velasquez-Lopez filed an amended petition for a writ of habeas corpus against Harold Clarke, the Director of the Department of Corrections. He alleged he "was deprived of his right to effective assistance of counsel under the Sixth Amendment" because his counsel failed to "prosecute" his appeal.[2] Clarke filed a motion to dismiss asserting that counsel for Velasquez-Lopez was not deficient for failing to file a petition for appeal because Velasquez-Lopez informed his counsel that he had obtained new counsel who would file his appeal.

---

[1] The letters to the circuit court were written in English. At the hearing in the habeas proceedings, Velasquez-Lopez testified that a cellmate at the Culpeper County jail who speaks Spanish wrote letters in English for him.

[2] Velasquez-Lopez asserted additional grounds in his petition that are not before us on appeal.

2

At an evidentiary hearing conducted by the circuit court on the habeas application, Velasquez-Lopez testified that after his sentencing, he spoke to Lea and asked her to "reopen" his case, which she agreed to do. Although Velasquez-Lopez denied telling Lea not to file an appeal, he testified that he informed Lea "to keep [his case] open so that I can have another attorney help me." Velasquez-Lopez stated he wrote to Lea and asked her to make his file available to new counsel. He testified that he never gave Lea the name of new counsel and, in fact, did not have new counsel at that time or believe that his brothers had obtained new counsel for him at that time. Although Velasquez-Lopez testified he wanted a different result in his case, he stated repeatedly he did not want Lea to change the result.

Lea testified she received a letter from Velasquez-Lopez dated October 4, 2010, in which he informed Lea that he did "not feel satisfied with her work."[3] In the letter, Velasquez-Lopez stated that his "brothers want to do something better for me but I would like to ask you if you could re-open the case. They want to appeal my case but we need you to open the case so that another attorney can do something for me." Lea testified that upon receipt of the letter, she visited Velasquez-Lopez at the Culpeper County jail on October 6, 2010, where he informed Lea that he did not want Lea to file an appeal for him. According to Lea, Velasquez-Lopez "clearly told me he did not want me to work anymore on his case." She memorialized his instructions on the letter with the following note: "10/6/10 – visited JCV-L @ Culpeper Jail informed he did NOT want me to file appeal for him." (Emphasis in original.)

Lea testified that on October 7, 2010, she received a telephone call from a brother of Velasquez-Lopez. She memorialized the conversation in her file with the following note: "10/7/10 – call from Mr. Mario Lopez, brother does want me to visit again & file." Lea also

---

[3] The letter was written in Spanish and translated by Lea's office translator.

made a notation of her review of the file on October 7 with her mentor attorney. Lea explained that she filed a notice of appeal for Velasquez-Lopez on that date because she was "informed that they needed to preserve the time." Subsequent to filing the notice, Lea received a letter from Velasquez-Lopez, dated October 8, 2010, in which he asked Lea "to give my new lawyer any paper work that he request[s]."

Lea testified she did not file a petition for appeal because Velasquez-Lopez informed her that he did not want her to handle the appeal and because both he and his brother informed her he had new counsel. As she explained,

> [N]ot only did I have a discussion with Mr. Velasquez-Lopez that he did not want me to do the paper-work for the appeal document but first his brother and then he, himself, in writing informed me that he had an attorney for whom I was to prepare the file and he would get in contact with me.

Following the hearing, the circuit court issued a letter ruling stating that it had "fully considered the testimony of the witnesses and the arguments of counsel" and had "observed the witnesses and their demeanor and made determinations as to their credibility." The circuit court found that Velasquez-Lopez "had clear[ly] conveyed his wishes that he did not want [Lea] to file an [a]ppeal for him." Based on that finding, the circuit court ruled that Lea "was not deficient for failing to file a [p]etition for [a]ppeal" and therefore dismissed the petition for writ of habeas corpus.

## II.     ANALYSIS

Velasquez-Lopez contends the habeas court's finding that he "had clear[ly] conveyed his wishes that he did not want [Lea] to file an [a]ppeal for him" was plainly wrong. "The factual findings of the [circuit court] in a habeas corpus hearing are presumed to be correct and will be upheld by us unless plainly wrong or unsupported by credible evidence." Abbott v. Peyton, 211

Va. 484, 486, 178 S.E.2d 521, 523 (1971);  see also Fuentes v. Clarke, 290 Va. ___, ____, ____ S.E.2d ___, ___ (October 29, 2015) (habeas court's findings of historical fact are entitled to deference and binding unless plainly wrong or without evidence to support them); Dominguez v. Pruett,  287 Va. 434, 440, 756 S.E.2d 911, 914 (2014) (same); compare Zemene v. Clarke, 289 Va. 303, 307, 768 S.E.2d 684, 686 (2015) (habeas court's decision to dismiss petition is reviewed de novo where dismissal is "based upon a review of the pleadings without an evidentiary hearing").

Following the analysis set forth in Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000), we have held that the two-part test enunciated in Strickland v. Washington, 466 U.S. 668, 688, 694 (1984), applies to claims of ineffective assistance of counsel when a convicted defendant alleges that counsel failed to file a direct appeal.  Miles v. Sheriff, 266 Va. 110, 114, 581 S.E.2d 191, 193 (2003).  Thus, "a convicted defendant 'must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant.'"  Id. (quoting Roe, 528 U.S. at 476-77).  "'[W]hen counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal.'"  Jenkins v. Director, Va. Ctr. for Behav. Rehab., 271 Va. 4, 17, 624 S.E.2d 453, 461 (2006) (quoting Roe, 528 U.S. at 484).  "In this circumstance, prejudice is generally presumed."  Id.

With specific regard to the performance prong of the Strickland test at issue here, the Supreme Court of the United States in Roe recognized two scenarios in which a convicted defendant may raise a claim of ineffective assistance of counsel for failure to file a direct appeal. First, a lawyer acts in a professionally unreasonable manner when the lawyer "disregards specific

instructions from the defendant to file a notice of appeal." Roe, 528 U.S. at 477. This is so because "filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes." Id. Second, a lawyer may act in a professionally unreasonable manner when the lawyer fails to consult with the defendant regarding an appeal and there is a constitutionally-imposed duty to do so. A constitutional duty to consult may arise when "a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal)" or when "this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480.[4]

Velasquez-Lopez seeks to establish a claim for ineffective assistance of counsel based on the first scenario – that Lea failed to follow his instructions to file an appeal.[5] As the Supreme Court stated in Roe, "[c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." Id. at 478 (emphasis added). On the other hand, "a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." Roe, 528 U.S. at 477 (emphasis in original).

We find no merit in Velasquez-Lopez's contention that the circuit court's finding of fact was plainly wrong. Velasquez-Lopez was required to prove his claim that Lea disregarded his

---

[4] In making this determination, courts should consider all relevant factors in a given case. "Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." Roe, 528 U.S. at 480.

[5] Although Roe involved the failure to file a notice of appeal, we believe the same analysis applies to the issue of whether counsel was deficient for failing to file a petition for appeal.

instructions to prosecute his appeal. See Nolan v. Peyton, 208 Va. 109, 112, 155 S.E.2d 318,

321 (1967). The circuit court heard testimony from both Velasquez-Lopez and Lea, considered

the evidence presented, and found that no such instructions were given. To the contrary, the

circuit court found that Velasquez-Lopez "clear[ly] conveyed his wishes that he did not want

[Lea] to file an [a]ppeal for him." There was credible evidence to support this finding. Lea

testified that Velasquez-Lopez told her he did not want her to file the appeal for him. Velasquez-

Lopez wrote letters to the circuit court and Lea stating that he was dissatisfied with Lea's

assistance and that his brothers had retained a new attorney for him. Additionally, Velasquez-

Lopez testified at the hearing that he only wanted Lea to "reopen" the case so another attorney

could help him.

Velasquez-Lopez argues that his difficulty with the English language and lack of

comprehension of the criminal proceedings rendered his instructions to counsel unclear and that

such ambiguity should be resolved in his favor.[6] We decline Velasquez-Lopez's invitation to

depart from our standard of review and examine the evidence for ambiguities or inconsistencies.

Velasquez-Lopez was provided with a court-appointed interpreter to address his difficulties with

the English language. Furthermore, Lea testified that despite her initial concerns with

Velasquez-Lopez's mental status, his understanding of the criminal process increased to the

---

[6] Although Velasquez-Lopez also contends that the interpreter was not present when Lea visited him at the jail on October 6, there is no support in the record for this contention. To the contrary, Lea testified that the interpreter was present during all of her meetings with Velasquez-Lopez at the jail except for "the first one or two" and Velasquez-Lopez did not present evidence otherwise. It was, of course, Velasquez-Lopez's burden to prove any such contention. Nolan, 208 Va. at 112, 155 S.E.2d at 321.

point that she was no longer concerned by the time he pled guilty.[7]  Therefore, we cannot say

that the circuit court's finding was plainly wrong or unsupported by credible evidence. [8]

---

[7]  Lea specifically testified:

[A]s time passed I began to believe that Mr. Velasquez-Lopez was hearing and understanding what I was saying.  And again, as we went through the court ordered remediation I think I referred it to him and in the court records as a civics class.  As we went through that again, he was not just, because the psychiatrist had used the phrase parroting, he was not just parroting, he was in fact asking me questions through [the interpreter].  He was being very clear about what he wanted.  He was arguing about whether or not he would get all the time or none of the time.  He wanted to be deported.  He was very clear on the things that he wanted so that as time, both time and our discussions progressed, it was my belief that his understanding progressed significantly and that he had gone from being a very, a very – a client who was truly assisting with his case rather than a client who was asking me to give him everything about his case.

[8] Velasquez-Lopez argues that Standard 9.2 of the Virginia Standards of Practice for Indigent Defense Counsel sets forth the proper standard for the purpose of the performance prong under Strickland.  Standard 9.2 provides that counsel shall take the necessary steps to perfect an appeal "[i]f the client advises counsel that he or she wishes to note an appeal" and "shall cooperate in providing information to appellate counsel" if "relieved in favor of appellate counsel."  Virginia Indigent Defense Commission, Commonwealth of Virginia – Standards of Practice for Indigent Defense Counsel, http://www.indigentdefense.virginia.gov/PDF documents/Standards of Practice 20120315.pdf (last visited October 13, 2015).  To the extent Standard 9.2 required Lea to file the petition despite Velasquez-Lopez's instructions otherwise, he did not cite to these standards of practice in the habeas proceedings below.  Although Velasquez-Lopez did argue in the circuit court that Code § 19.2-159 required Lea to remain as counsel until relieved by new counsel, he does not cite to this statute on appeal.

In any event, our analysis of counsel's representation under the Sixth Amendment is not controlled by state standards or rules of practice.  See Roe, 528 U.S. at 479 ("[W]hile States are free to impose whatever specific rules they see fit to ensure that criminal defendants are well represented, we have held that the Federal Constitution imposes one general requirement.").  Indeed, even the Virginia Indigent Defense Commission recognized that the Standards of Practice for Indigent Defense Counsel "should not serve as a benchmark for ineffective assistance of counsel claims or attorney discipline hearings."  Introductory Note to Virginia Standards of Practice for Indigent Defense Counsel; see also Smyth v. White, 195 Va. 169, 173-74, 77 S.E.2d 454, 456 (1953) (failure to comply with criminal procedure statute cannot be reached by writ of habeas corpus).  We will not recognize a new scenario, outside of Strickland, imposing a Sixth Amendment duty upon counsel to prosecute an appeal in defiance of the client's instructions.  The issue before us is not whether Lea failed to comply with state standards of practice but whether, as Velasquez-Lopez maintains, the habeas court's finding that

III.     CONCLUSION

For the foregoing reasons, we will affirm the judgment of the circuit court.

Affirmed.

JUSTICE ROUSH, with whom JUSTICE GOODWYN joins, dissenting.

Because entitlement to habeas relief is a mixed question of law and fact, the habeas court's findings and conclusions are not binding upon this Court, but are subject to review to determine whether the court correctly applied the law to the facts. Zemene v. Clarke, 289 Va. 303, 306-07, 768 S.E.2d 684, 686 (2015), Curo v. Becker, 254 Va. 486, 489, 493 S.E.2d 368, 369 (1997). I would hold that the circuit court hearing the habeas petition below erred in finding that Velasquez-Lopez failed to establish that trial counsel's performance was ineffective and that he was prejudiced as a result.

Under the two-prong test of Strickland v. Washington, 466 U.S. 668, 688-90 (1984), a defendant claiming ineffective assistance of counsel under the Sixth Amendment must show first, that counsel's representation fell below an "objective standard of reasonableness," and, second, that counsel's deficient performance prejudiced the defendant. The reasonableness of counsel's conduct is judged on the facts of the particular case, viewed as of the time of counsel's conduct. Id. at 689-90.

The Strickland test applies to claims that counsel was constitutionally ineffective for failing to perfect an appeal. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) ("[W]e hold that

---

Velasquez-Lopez instructed Lea not to file an appeal for him was plainly wrong. As we hold herein, it was not.

this test applies to claims . . . that counsel was constitutionally ineffective for failing to file a notice of appeal.").  As the Supreme Court went on to explain:

> We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable. . . .  At the other end of the spectrum, a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently.

Id. (citations omitted) (emphasis in original).  See Miles v. Sheriff of Va. Beach City Jail, 266 Va. 110, 114, 581 S.E.2d 191, 193 (2003) (Strickland "applies to a claim 'that counsel was constitutionally ineffective for failing to file a notice of appeal.'") (quoting Roe, 528 U.S. at 477).  See also Jenkins v. Director, Va. Ctr. for Behav. Rehab., 271 Va. 4, 17-18, 624 S.E.2d 453, 461-62 (2006) (applying Strickland and concluding that "failing to perfect an appeal to this Court" was deficient performance, falling below the standard of reasonableness).

If counsel's conduct is found to be deficient in failing to perfect an appeal, prejudice to the defendant is presumed.  As the Supreme Court concluded in Roe:

> [W]e hold that when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal.

Id. 528 U.S. at 484.  See Jenkins, 271 Va. at 17, 624 S.E.2d at 461 (recognizing the holding in Roe that, without more, a defendant who is deprived of an appeal due to counsel's deficient performance has established a successful claim of ineffective assistance of counsel and is therefore entitled to an appeal).

Velasquez-Lopez was charged with 33 counts of taking indecent liberties with a minor, in violation of Code § 18.2-370.1.  Velasquez-Lopez was indigent, and trial counsel was appointed to represent him.

Trial counsel became concerned about her client's ability to understand the criminal proceedings and to assist in his own defense.[1] The circuit court ordered that an examination be conducted pursuant to Code § 19.2-169.1 to determine whether Velasquez-Lopez was competent to stand trial. The initial evaluation concluded that Velasquez-Lopez was not competent to stand trial because he "does not sufficiently understand the legal system at a factual level to allow him to participate with his attorney in his own defense." A second evaluation concluded that Velasquez-Lopez was competent to stand trial, noting that "[w]here gaps in his knowledge exist, he has the capacity and the motivation to be informed/educated by a reliable authority, such as his attorney." After a competency hearing, the circuit court found that Velasquez-Lopez was competent, but directed that trial counsel meet with her client for up to ten hours in the presence of a Spanish language interpreter to educate Velasquez-Lopez about the factual deficits noted in the initial evaluation.

On June 10, 2010, Velasquez-Lopez pled guilty to all of the charges against him. He was sentenced on September 7, 2010 to 156 years of incarceration with all but 18 years suspended, plus three years of probation and 40 years of good behavior. An order reflecting the sentence was entered on September 21, 2010.

Velasquez-Lopez wrote his trial counsel from jail on October 4, 2010. The letter was written in Spanish and translated as follows:

> The reason for this letter is to tell you that I do not feel satisfied with your work. My brothers want to do something better for me but I would like to ask you if you could reopen the case. They want to appeal my case but we need you to open the case so that another attorney can do something for me. At least so I could have less time to serve because I know that I will be deported, why deny me a second

---

[1] Velasquez-Lopez, who had less than one year of formal education in his home country, did not speak English and was functionally illiterate in both English and his native language of Spanish.

opportunity. I called you on Sunday, October 3rd so that you could come see me and on October 4th but you have not come. You know I am not okay with you [sic] work. One, I expected that my wife would testify in front of the Judge and that did not happen. Well I hope that you will come see me soon and I will explain whats [sic] to follow.

Trial counsel visited Velasquez-Lopez in the jail on October 6, 2010. Her notes from the visit read:

visited JCV-L @ Culpeper Jail
informed he did <u>NOT</u> want me to file an appeal for him

(Emphasis in original.)

On October 7, 2010, the day after she visited Velasquez-Lopez in jail, trial counsel received a telephone call from her client's brother. The brother told her that they had a new attorney, but they wanted her to file the appeal. Trial counsel filed the notice of appeal required by Rule 5A:6 with the circuit court later that day. On October 8, 2010, Velasquez-Lopez sent trial counsel a letter (in English) that said:

I am writing you to let you know that I am giving you authorization to give my new lawyer any paper work [sic] that he request [sic]. I thank you for your time and concern on the matter.

In response, trial counsel prepared her file to be sent to her client's new attorney.

Trial counsel took no further action in the case. She did not file a petition for appeal with the Court of Appeals as required by Rule 5A:12. No other attorney filed the petition for appeal on behalf of Velasquez-Lopez. Thus, Velasquez-Lopez's appeal was not perfected and the appeal was dismissed by the Court of Appeals.

The majority places much emphasis on Velasquez-Lopez's instruction to his attorney not to file an appeal. In the majority's view, that instruction places him at the "other end of the spectrum" described by <u>Roe</u>, where "a defendant who explicitly tells his attorney <u>not</u> to file an

12

appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." 528 U.S. at 477 (emphasis in original).

However, the habeas court's finding that Velasquez-Lopez "had clear[ly] conveyed his wishes that he did not want [trial counsel] to file an [a]ppeal for him" is plainly wrong and is unsupported by the evidence. Trial counsel was very much aware of Velasquez-Lopez's desire to appeal his conviction. She was also aware that when her client asked her to "reopen" his case, he meant "appeal" his conviction. Trial counsel testified at the evidentiary hearing on the habeas petition:

| [Respondent's Counsel:] | To your recollection did the petitioner ever tell you that he wanted you to file an appeal? |
| --- | --- |
| [Trial Counsel:] | To my recollection he had asked about reopening the case and again . . . based on that and the fact that he had directly prior to the conversation with me, written a letter to the [circuit c]ourt which had been denied. I took that to mean that he would like that appeal filed and to preserve that I went ahead and filed the [notice of appeal]. |
| [Respondent's Counsel:] | That what had been denied? |
| [Trial Counsel:] | That his motion to rehear, to re-evaluate the sentence had been denied. |
| [Respondent's Counsel:] | The sentence in the circuit court matter[?] |
| [Trial Counsel:] | Yes. |

The only other communication trial counsel received from her client after filing the notice of appeal was a letter that asked her to "give my new lawyer any paper work [sic] he request [sic]." Trial counsel knew that no substitute counsel ever entered an appearance before the court on behalf of Velasquez-Lopez, and that she had not been granted leave to withdraw from her representation.

13

When trial counsel was told that her client wanted to appeal, but wanted different counsel on appeal, she was not free from her responsibilities to her client. Trial counsel is counsel of record until relieved of that responsibility by a court order. Rule 1:5 provides that "[c]ounsel of record shall not withdraw from a case except by leave of court after notice to the client of the time and place of a motion for leave to withdraw." Further, Code § 19.2-159(C) provides that court-appointed counsel for an indigent defendant such as Velasquez-Lopez shall "represent the accused in the proceeding against him, including an appeal, if any, until relieved or replaced by other counsel" (emphasis added).[2]

In this case, there was no court order entered allowing trial counsel to withdraw. No order was entered appointing substitute counsel. No proposed substitute counsel ever contacted trial counsel. Thus, trial counsel never provided her file in the case to a successor to enable him or her to perfect the appeal. Trial counsel never asked the circuit court to relieve her of her representation of Velasquez-Lopez. Trial counsel never advised the circuit court that her client wanted another attorney for his appeal. Trial counsel never verified that a petition for appeal on behalf of her client was timely filed with the Court of Appeals.

The situation that trial counsel found herself in after her client told her that he wanted new counsel on appeal is hardly novel. Criminal defendants frequently lose faith and confidence in their attorneys following their convictions. The Virginia Standards of Practice for Indigent Defense Counsel squarely address the situation and provide guidance to trial counsel:

---

[2] Trial counsel appears to have been unaware of this provision of Code § 19.2-159 in October 2010. In the certificate attached to the notice of appeal filed on October 7, 2010, trial counsel certified that "counsel for defendant as [sic] appointed by the Court to represent defendant in the Culpeper County Circuit Court. Counsel has not been appointed to represent defendant on any appeal." At the time of the evidentiary hearing on the habeas petition in September 2014, however, she testified she was aware that her appointment in the circuit court continued through the appeal.

14

> If the client advises counsel that he or she wishes to note an appeal, counsel shall take all necessary steps to perfect such appeal in a timely fashion pursuant to the Rules of the Supreme Court of Virginia. If trial counsel is relieved in favor of other appellate counsel, trial counsel shall cooperate in providing information to appellate counsel concerning the proceedings in the trial court.

Virginia Standards of Practice for Indigent Defense Counsel, Standard 9.2 (2012).[3]

Similarly the American Bar Association's Criminal Justice Standards for the Defense Function specify that:

> Defense counsel should take whatever steps are necessary to protect the client's rights of appeal, including filing a timely notice of appeal in the trial court, even if counsel does not expect to continue as counsel on appeal.

ABA Standards for Criminal Justice, Defense Function 4-9.1 (4th ed. 2015). While our analysis of the adequacy of counsel's representation under the requirements of the Sixth Amendment is not controlled by state or ABA standards, such standards are nevertheless informative, inasmuch as they assist a court in performing its constitutionally required duty of determining if counsel made objectively reasonable choices in representing his or her client. In this instance, counsel did not.

I agree with the holding of the Federal District Court for the Southern District of Georgia, which granted habeas relief in a case factually similar to this case. In Datts v. United States, Case No. CV412-009, 2012 U.S. Dist. LEXIS 170569 (S.D. Ga. 2012), trial counsel had been

---

[3] These standards are legislatively mandated by Code § 19.2-163.01(A)(4) (distinguishing between mere "guidelines" to be issued on other matters, and these "official standards of practice for court-appointed counsel and public defenders to follow in representing their clients"). See Commonwealth of Virginia, Virginia Indigent Defense Commission, Standards of Practice for Indigent Defense Counsel in Non-Capital Criminal Cases at the Trial Level, http://www.indigentdefense.virginia.gov/PDF documents/Standards of Practice 20120315.pdf (last visited October 15, 2015). Although, as the majority notes, the preamble to the standards suggests that they "should not serve as a benchmark for ineffective assistance of counsel claims," id. at 2, the Supreme Court of the United States has stated that such standards may be considered as "guides to determining what is reasonable." Strickland, 466 U.S. at 688.

retained for the trial only.  At sentencing, the defendant indicated he wanted the court to appoint a different attorney for his appeal.  Trial counsel did nothing to assure that his client's appeal was perfected.  The district court, adopting the report of the United States magistrate judge reported at 2012 U.S. Dist. LEXIS 171337 (S.D. Ga. 2012), found that counsel's performance was constitutionally ineffective.  The court reasoned that it remained retained counsel's duty to "consult with [his client] and if [the client] wanted to appeal, preserve his appellate rights until substitute counsel entered [an] appearance."  Id. at *7.

I would hold that trial counsel was constitutionally ineffective because Velasquez-Lopez's appeal was not perfected while she remained counsel of record.  Counsel was ineffective for failing to move to withdraw from her representation or to inform the circuit court that her client wanted a new attorney for his appeal.  Had she taken such actions, the circuit court would have either ordered her to continue to represent Velasquez-Lopez on appeal, or appointed substitute counsel.  In either event, Velasquez-Lopez's appeal would not have been dismissed for failure to file the petition for appeal.  For these reasons, trial counsel's representation "fell below an objective standard of reasonableness," Strickland, 466 U.S. at 688, and, thus, Velasquez-Lopez has satisfied the performance prong of Strickland.  Where counsel is found to be ineffective for failing to perfect an appeal, prejudice is presumed.  Roe, 528 U.S. at 484; Jenkins, 271 Va. at 17, 624 S.E.2d at 461.  Accordingly, I would reverse the judgment of the habeas court, and remand this case with directions to issue the writ of habeas corpus allowing the petitioner to pursue an appeal.

16